Daniel BISSON, et al., Plaintiffs,

v.

BANK OF AMERICA, N.A., et al., Defendants.

Case No. C12–0995JLR.

United States District Court, W.D. Washington, at Seattle.

Jan. 15, 2013.

Ryan R. West, Corvus Law Group LLC, Salt Lake City, UT, Kevin Lavern Johnson, Olympia, WA, for Plaintiff.

Allen C. Myers, Thomas M. Hefferon, Goodwin Procter, Washington, DC, John S. Devlin, III, Lane Powell PC, Seattle, WA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

JAMES L. ROBART, District Judge.

This matter comes before the court on Defendants' motion to dismiss in a case dealing with fallout from the recent mortgage crisis. (Mot. (Dkt. # 31).) This case requires us to consider how certain real estate finance laws apply in the context of mortgage-backed securities and other complex debt instruments. The court has considered the submissions of the parties and the governing law and, considering itself fully advised, GRANTS the motion to dismiss.

## I. INTRODUCTION

A person who wants to buy a house will usually go to a bank and ask for a home loan. The bank loans money with the understanding that, if the borrower cannot repay the loan, the bank can foreclose on the house. Ordinarily, the bank forecloses on the house by using what is called a "deed of trust," which gives the lender power to appoint a third-party trustee to sell the house and collect the proceeds. *See generally Bain v. Metro. Mortg. Grp.,*

*Inc.,* 175 Wash.2d 83, 285 P.3d 34, 38 (2012). In the past, this tended to be a relatively straightforward legal arrangement involving only a bank, a borrower, and an appointed trustee, with the deed of trust serving as security for payment of the loan. *See id.* at 38–39. This was an arrangement of mutual benefit: the borrower received money to purchase a home, and the bank collected interest on the loan.

In recent years, the arrangement has become more complicated. *See id.* at 39–41. These days, a home loan is much less likely to be a classic three-party deed of trust arrangement. *Id.* To be sure, most home loans are still structured using deeds of trust. But whereas in times past the lender bank would typically hold the loan and collect interest over time, today a bank is likely to be more creative in its use of the asset. *See id.*

Specifically, banks are more likely to repackage loans into complex debt instruments or so-called "mortgage-backed securities." *See id.* (citing *Public Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co.,* 277 F.R.D. 97, 102–03 (S.D.N.Y.2011) (discussing mortgage securitization generally)). The basic idea of these complex debt instruments is that a bank mixes a bunch of home loans together in a pool, then chops the pool into bits to create new packages of debt to sell to investors. *Id.* One could analogize this process to taking raw ingredients and combining them to make bread then selling the slices individually, or putting different kinds of meat into a sausage grinder then selling the individual sausages. What is born from this process are new debt instruments, sold on the open market, that have pooled-and-sliced home loans as their ingredients. Different debt instruments work in different ways, but the basic concept is that home loan debt gets repackaged and sold to other investors rather than being held by the bank that originated the loan. *See id.*

On a macro scale, this accomplishes at least two things: First, it allows banks to spread mortgage risk across the financial system rather than hold it all themselves. Second, it may attract more investors into the financial system by creating new and attractive investment products that allow investors to carefully calibrate their risk/return ratios. In other words, bankers can make very useful products out of the mortgage "dough," much like one might prefer to eat a slice of bread than to eat the component ingredients on their own.

But these complex debt instruments also create problems, and these problems have come into sharp focus in the wake of the recent housing crash and mortgage crisis. *See id.* at 40–41. In particular, problems may arise from the fact that the regulatory scheme governing home loans was designed primarily to deal with traditional three-party deeds of trust or mortgages rather than the more complex situation we face now. *Id.* This case presents questions regarding how to reconcile today's complex debt products with a regulatory scheme that was designed in simpler times.

To be specific, this case deals with how to apply the laws of debt collection and non-judicial foreclosure when the lender is not a single entity but one or more investors who purchased repackaged debt. (*See generally* First Am. Compl. (Dkt. # 26).) Nonjudicial foreclosure refers to the process by which a bank or other lender uses a deed of trust to take possession of a defaulted borrower's home without having to go to court. *See Bain,* 285 P.3d at 38–39. The lender appoints a trustee who sells the house, and the lender collects the proceeds. *Id.* Nowadays though, it is not always crystal clear who holds the debt after it. has been repackaged, and accordingly who has the right to collect on it and how. That is what this case is about. The plaintiffs in this case

are asking for the court's help in making sense of non-judicial foreclosure in the new world of mortgage-backed securities and other complex debt instruments. (*See generally* Compl.) In other words, they want help figuring out who owns their home loans, who they should make payments to, who has the right to foreclose on their debts, and who they must speak to if they want to renegotiate terms of repayment. (*Id.* ¶¶ 130–140.)

## II. FACTS

Plaintiffs are borrowers who own homes in Washington. (*Id.* ¶¶ 437.) All Plaintiffs purchased their homes with proceeds from loans that are now serviced by Defendant Bank of America, N.A. ("BANA"). (*Id.*) There are 55 plaintiffs and seven defendants in this action. Defendants include BANA, loan-originator Countrywide Home Loans, the Mortgage Electronic Registration System ("MERS")[1] and other institutions involved in the securitization and servicing of Plaintiffs' loans. (*Id.* ¶¶ 38–45.) Plaintiffs allege that their home loans were securitized, repackaged, and sold to third parties, and that as a result, BANA no longer has the right to enforce the payment obligations on the loans or to foreclose on their homes using a deed of trust. (*Id.* ¶¶ 71–72.)

Plaintiffs filed this action "to prevent the improper taking and/or foreclosure of their property" by BANA. (*Id.* ¶ 1.) However, it appears that no foreclosures are currently pending against any of the Plaintiffs, many of whom are current on their loan payments. (*See* Welch Decl. (Dkt. # 17) ¶ 3.) Instead, Plaintiffs allege that they are on a "slippery slope" to losing their homes through non-judicial foreclosure (Compl.

¶ 86), even though they allege no specific facts showing that foreclosure is imminent or that anyone has threatened them with foreclosure. (*See* Compl.)

Plaintiffs also claim that they have been defrauded by BANA through a series of deceptions that caused overpayments, miscalculated interest, and damaged credit scores. (Compl. ¶¶ 96–115.) Ultimately, Plaintiffs ask the court to determine their obligations under their loans and to identify their rightful creditors given that many of their loans have been repackaged, securitized, and sold to investors. (*Id.* ¶¶ 130–140.)

## III. ANALYSIS

In their attempt to learn who their creditors are, Plaintiffs bring four different causes of action: (1) one for violation of Washington's Consumer Protection Act ("CPA"), RCW Chapter 19.86; (2) another for violation of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692f(6); (3) one for fraud; and finally (4) one for declaratory relief. (Compl. ¶¶ 130–62.)

None of these theories of relief are viable as they are currently pleaded. Accordingly, the court GRANTS Defendants' motion to dismiss with respect to each of the claims listed above.

### A. Plaintiffs Lack Standing to Bring CPA and FDCPA Claims

First, the court will narrow the issues to those it can properly decide. This narrowing process begins with the basic requirement of standing—the requirement that federal courts only decide issues that are necessary to resolve a "case or controver-

---

**1.** MERS is a system designed to facilitate securitization and create liquidity in the home mortgage market. Basically, MERS creates an environment in which securitization and repackaging of debt is possible. In the bread analogy used above, MERS is the oven. In the sausage analogy, it is the sausage grinder. For a detailed explanation of the role MERS plays in mortgage securitization, *see Bain v. Metropolitan Mortgage,* 175 Wash.2d 83, 285 P.3d 34 (2012).

sy." Plaintiffs do not have standing to bring their CPA and FDCPA claims, so the court DISMISSES those claims with prejudice.

 To demonstrate standing to sue in federal court, a plaintiff must show (1) that she has suffered an injury in fact; (2) that the injury is traceable to the conduct complained of; and (3) a likelihood that the injury would be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In deciding a motion to dismiss for lack of standing, the court can look beyond the pleadings to affidavits and other testimony in order to resolve factual disputes related to jurisdiction. *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

██ For their CPA and FDCPA claims, Plaintiffs have failed to allege facts that establish injury, and therefore Plaintiff's lack standing. (*See* Compl. ¶¶ 147–162.) Importantly, as the complaint is presently written, these two causes of action are predicated solely on flaws in deeds of trust and on BANA's right to pursue non-judicial foreclosure against Plaintiffs. (*See id.*) As such, the only injury that could be traced to this conduct is injury resulting from wrongful non-judicial foreclosure. As noted above, Plaintiffs have not alleged that any Plaintiffs are currently subject to foreclosure proceedings. Moreover, Defendants have filed affidavits showing that no foreclosure proceedings are pending, that most Plaintiffs were current on their loan payments at the time suit was filed, and that many of the Plaintiff's did not even have loans that were securitized in the objectionable manner described in the Complaint. (Welch Decl. ¶ 3.) As such, since there is no traceable injury, there is no justiciable controversy with respect to these two claims, and Plaintiffs do not have standing to bring their CPA or FDCPA claims. Accordingly, the court GRANTS Defendants' motion to dismiss these claims and, since this defect cannot be cured by amendment, DISMISSES these claims with prejudice.[2]

## B. Fraud Claim

██ Next, the court turns to Plaintiffs' claim of fraud. The court GRANTS Defendants' motion to dismiss Plaintiffs' fraud claim. First, the court grants the motion, in part, because the same logic that applied above applies equally to part of Plaintiffs' fraud claim to the extent it is grounded in wrongful non-judicial foreclosure. In other words, Plaintiffs do not have standing to pursue a fraud claim based solely on the threat of non-judicial foreclosure because there are no specific allegations that any foreclosures are pending or that foreclosure threats were made.[3]

2. The court notes that the complaint is not a model of clarity, and that Plaintiffs may not have intended to draft their CPA and FDCPA claims to be predicated solely on non-judicial foreclosure, but on some other conduct instead. If this is the case, the complaint is simply not clear enough. (*See* Compl. ¶¶ 147–62.) By dismissing the above claims with prejudice, the court does not intend to foreclose the possibility of amending the Complaint to properly state CPA or FDCPA claims based on other conduct. Moreover, the deadline to amend pleadings is not until August 15, 2013. (Minute Order Setting Trial Date (Dkt. # 30).) In addition, if the situation changes and BANA initiates non-judicial foreclosure action against Plaintiffs, Plaintiffs are free to seek judicial relief. But for the time being, amendment would be futile since affirmative evidence establishes that there are no pending foreclosures and hence that there is no standing. (*See* Welch Decl. ¶ 3.)

3. Plaintiffs make several overbroad allegations that they have been threatened with foreclosure, have received notices of default, and have attempted to modify their loans (*see* Compl. ¶¶ 84–85), but these allegations are far too vague for the court to determine which Plaintiffs have a real and immediate controversy and which do not.

Just like above, there is no injury traceable to the conduct described in the complaint. Thus, the court GRANTS Defendants' motion to dismiss Plaintiffs' fraud claims that are grounded solely on wrongful non-judicial foreclosure and DISMISSES those claims with prejudice.[4]

Second, Plaintiffs plead an additional theory that fails to state a claim for fraud under federal fraud pleading requirements. In their amended complaint, Plaintiffs allege that BANA[5] orchestrated a broad-based scheme that included lying to borrowers, improperly crediting payments, and making false statements in order to further their profit motives. (Compl. ¶¶ 96–129.) Further, they allege that BANA made these false statements as part of a master plan to increase their profits that was connected to the federal Home Affordable Modification Program ("HAMP"). (*Id.* ¶¶ 96–115.) Plaintiffs allege that BANA perpetuated this fraudulent scheme through a series of false statements (described in extensive detail in the Complaint) made directly to Plaintiffs and that Plaintiffs relied upon. (*See id.*) Further, Plaintiffs allege that they suffered resulting damages in many forms—namely, higher payments, rates, and penalties than they otherwise would have been required to pay. (*Id.* ¶¶ 118–29.) Plaintiffs also allege that as part of this scheme, BANA failed to properly credit payments, incorrectly calculated interest, and failed to accurately debit fees paid and that, as a result, Plaintiffs' credit scores have been damaged, the title to their houses has been clouded, and they have overpaid interest and fees because BANA lied to them. (*Id.* ¶¶ 118–22.)

At the outset, the court notes that it is not fatal to Plaintiffs' fraud claim that it involves violations of HAMP. Many district courts have held that HAMP does not create an express or implied right of action to enforce its terms. *See Cleveland v. Aurora Loan Serv., LLC,* No. 11–0773, 2011 WL 2020565, at *4 (N.D.Cal. May 24, 2011) (collecting cases). In other words, a Plaintiff cannot sue to compel compliance with HAMP or to obtain loan modifications through HAMP. *See id.* However, many district courts have taken a different approach to state law claims, such as fraud, that do not attempt to compel compliance with HAMP or obtain the benefit of loan modification, but simply make other allegations of which HAMP is a component. *See, e.g., Lopezlena v. Litton Loan Serv., LP,* No 3:12–cv–05313, 2012 WL 4479580, at *3–4 (W.D.Wash. Sept. 28, 2012) (analyzing loan modification fraud claim for adequacy of the pleadings while dismissing HAMP violation claims because HAMP does not create a private right of action). These courts, when confronted with allegations of fraud in the context of HAMP, tend to analyze the fraud claims by examining whether the plaintiffs have adequately pleaded the elements of fraud, not by simply stating that there is no cause of action for violation of HAMP. *See id.; but see Vasquez v. Wells Fargo Home Mrtg.,* No. 11cv462 L(WMC), 2012 WL 985308 (S.D.Cal. March, 22, 2012). In this case, the court will follow the approach taken in the Western District of Washington, which is to analyze fraud claims for adequacy of the pleadings even though the fraud claim involves certain allegations related to HAMP. *See Lopezlena,* 2012 WL 4479580, at *3–4.

---

4. As above, if the situation changes and BANA initiates non-judicial foreclosure action against Plaintiffs, Plaintiffs are free to seek judicial relief. But for the time being, amendment would be futile since affirmative evidence establishes that there are no pending foreclosures and hence that there is no standing. (*See* Welch Decl. ¶ 3.)

5. Plaintiffs do not make these allegations against any defendant other than BANA. (*See* Compl. ¶¶ 96–115.)

■ Upon doing so, the court concludes that Plaintiffs have not adequately alleged all elements of fraud under Washington law. Allegations of fraud must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b), and Plaintiffs have not met the Rule 9(b) standard here. Under Rule 9(b), a Plaintiff alleging fraud must "state with particularity the circumstances constituting fraud . . . , [although] [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) requires that, when averments of fraud are made, the circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong. . . . Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003). The plaintiff also must set forth "what is false or misleading about a statement, and why it is false." *Id.* Finally, a plaintiff who makes allegations on information and belief must state the factual basis for that belief, even with regard to matters within the defendant's knowledge. *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993).

■ Plaintiffs have not pleaded their fraud claim with particularity. Under Washington law, a fraud claim requires proof of nine elements: (1) a representation of an existing fact; (2) materiality of this representation; (3) falsity of the representation; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) intent that the representation be acted on; (6) ignorance of its falsity by the person to whom the representation is made; (7) reli-

ance on the truth of the representation; (8) a right to rely on the representation; and (9) consequential damages. *Kirkham v. Smith,* 106 Wash.App. 177, 23 P.3d 10, 13 (2001). Plaintiffs have not pleaded these claims with any kind of specificity.

It is true that Plaintiffs have described the alleged fraud at great length in the Complaint (*see* Compl. ¶¶ 96–129), but Plaintiffs describe the fraud only in very broad detail, which is not enough. Plaintiffs need to allege specific statements made in specific places on specific dates. *See Neubronner,* 6 F.3d at 671–72. Then, with respect to each of those statements, they must allege that the statement is false, that Plaintiffs relied on it, and that Plaintiffs suffered consequential damage, among other things. *See id.* Instead of doing this, Plaintiffs have described a general course of bad conduct that they believe amounts to fraud. (*See* Compl. ¶¶ 96–129.) And indeed, it may. But at the pleading stage, Rule 9(b) requires more than that. For Plaintiffs' fraud claims to go forward, Plaintiffs must be able to identify specific statements made by specific agents to specific plaintiffs. They have not done this. In particular, Plaintiffs have failed to distinguish between the 55 plaintiffs in this action. Surely, it cannot be the case that every single allegedly fraudulent statement was made to every single plaintiff. To properly allege fraud, Plaintiffs must, at a minimum, match allegedly fraudulent statements to particular Plaintiffs and explain how each Plaintiff relied on that statement and suffered damages. The Complaint does not do this. As a result, Plaintiffs have not pleaded in accordance with Rule 9(b) and have not raised their claim for relief above the speculative level. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).[6] In

---

6. Once again, the court notes that the complaint is less than clear with respect to which

conduct forms the basis for which causes of

short, Plaintiffs have failed to allege " 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. The court GRANTS Defendants' motion with respect to these claims and DISMISSES those claims without prejudice. The court grants leave to amend this claim within 20 days of the date of this order, otherwise it will be dismissed with prejudice.

## C. Declaratory Judgment

■ Last, Plaintiffs ask for a declaratory judgment to help them identify the legal consequences of their home loan debts. The court GRANTS Defendants' motion to dismiss this claim. First, the court GRANTS the motion to the extent it seeks declaratory relief with respect to non-judicial foreclosures under the same logic applied above: the Complaint does not allege that any such foreclosures have been initiated or threatened, or even that Plaintiffs are in default on their loans. Thus, Plaintiffs lack standing and the court DISMISSES these claims with prejudice.[7] However, Plaintiffs' other declaratory judgment requests pose more difficult questions.

At the heart of Plaintiffs' Complaint is a simple request: they want to know who owns their home loans. Plaintiffs argue that because their loans have been securitized, repackaged, and resold, and because this took place outside the public record, they literally do not know who their creditors are—that is, they do not know who can lawfully receive payments, who has the right to foreclose, and who Plaintiffs should talk to if they want to renegotiate terms of repayment. (Compl. ¶¶ 130–40.) Plaintiffs ask the court for declaratory relief on a number of questions germane to this general topic, including some specific to non-judicial foreclosure and others that deal more generally with who has rights in the underlying debt. (*See id.*) Plaintiffs argue that they "*are not attempting to void the Notes or Deeds of Trust or obtain a ruling invalidating their debt.*" (Resp. (Dkt. # 32) at 3. (emphasis in original).) Instead, they merely seek "a determination with respect to ownership and authority under their Note and Deed of Trust." (*Id.*)

The basic point Plaintiffs make is that, in simpler times, before the complex debt instruments that we have today appeared on the scene, and before the creation of MERS, Plaintiffs could have learned who owns their debts by simply going to the County Recorder's office. Today, however, Plaintiffs claim that they cannot do this because their debt has been repackaged and resold, and because the MERS-centered securitization process is secretive and prevents them from learning who holds their debt.[8] In other words, Plaintiffs suggest that, when the old mortgage lending rules are applied to new complex debt instruments, it is difficult for borrowers to know the legal consequences. Thus, they ask the court to grant declaratory relief so that they may know who their creditors are.

■ Plaintiffs ask legitimate questions, but it is not clear the court has the

---

action. (*See* Compl. ¶¶ 141–46.) The court construes the complaint as stating only two fraud theories: one based on the threat of nonjudicial foreclosure and one based on allegations related to the HAMP program. Accordingly, the court addresses only these two theories. If, in fact, Plaintiffs intended for other conduct to form the basis of its fraud claims, the Complaint is not clear enough and must be amended if these claims are to go forward,

7. *See supra* note 4.

8. Plaintiffs do not say whether they could obtain this information simply by asking their loan servicer.

power to answer them. Federal courts have limited authority to grant declaratory relief under the Declaratory Judgment Act: "in a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C § 2201(a). The purpose of declaratory relief is to "bring[ ] to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.,* 655 F.2d 938, 943 (9th Cir.1991). A declaratory judgment is supposed to fix the problem that arises when the other side does not sue, relieving potential defendants of the "Draconian threat of impending litigation which a harassing adversary might brandish," *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 (9th Cir.1990).

▮▮▮▮ Several basic prerequisites must be established before a court can grant declaratory relief. Principally, there must be "a case of actual controversy" over which federal courts have jurisdiction. 28 U.S.C. § 2201(a). Thus, there must be a justiciable controversy as that phrase is interpreted under Article III of the U.S. Constitution. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 125–26, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). A controversy must satisfy a simple test: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127, 127 S.Ct. 764.

▮▮▮▮ The court holds that Plaintiffs have not adequately pleaded a claim for declaratory relief with respect to who owns their home loans and has the right to collect on them. First, the controversy in this case is not of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127, 127 S.Ct. 764. The complaint does not allege that Plaintiffs are in fact making payments to the wrong entity, only that they might be. (*See* Compl.) In fact, Plaintiffs make payments to a loan servicer, BANA, just like they would in the case of an ordinary three-party deed of trust arrangement. The allegations in the complaint are not specific enough to establish that there is any immediate controversy that is about to erupt—indeed, no specific Plaintiffs are alleged to be in default or facing foreclosure, and there are no specific allegations that any Plaintiffs have been denied a legal right to negotiate with their creditors.[9] (*See id.*) The court finds unpersuasive Plaintiffs' allegations with respect to clouding of title and their houses being rendered unmarketable. (*Id.* ¶¶ 71, 128.) Nor is it enough to allege that Plaintiffs are on a "slippery slope" to foreclosure. (*Id.* ¶ 86.) These allegations are simply not enough to create a real and immediate controversy. As such, the court concludes that there is no immediate controversy justifying declaratory relief.

Second, the court cannot grant declaratory relief in the absence of a substantive cause of action. If Plaintiffs want the court to determine who their creditors are, they must demonstrate that some substantive law gives them a right to know this information. *See, e.g., Kimball v. Flagstar Bank F.S.B.,* 881 F.Supp.2d 1209, 1219–21 (S.D.Cal.2012); *Reeves v. ReconTrust Co., N.A.,* 846 F.Supp.2d 1149, 1168–69 (D.Or. 2012). The Declaratory Judgment Act creates only a remedy, not a cause of action. *See, e.g., Kimball,* 881 F.Supp.2d at 1219–21. Plaintiffs might have a claim

---

9. *See supra* note 3.

for declaratory relief if they could properly plead a cause of action that establishes that they have a legal right to the information they seek. *See, e.g., Amaral v. Wachovia Mortgage Corp.*, 692 F.Supp.2d 1226 (E.D.Cal.2010). If that were the case, declaratory relief might "bring[ ] to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement*, 655 F.2d at 943. But without such a cause of action, there is no claim for declaratory relief. The court holds that amendment might not be futile with respect to this claim, and therefore DISMISSES it without prejudice. The court grants Plaintiffs leave to amend this claim within 20 days of the date of this order, otherwise it will be dismissed with prejudice.

## IV. CONCLUSION

For the reasons described above, the court GRANTS Defendants' motion to dismiss Plaintiffs' First Amended Complaint (Dkt. # 31), dismissing some claims with prejudice and some without prejudice as described above (Dkt. # 31).