RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0137p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

JERRY RUSH; LILIANE RUSH,

*Plaintiffs-Appellants,*

v.

FREDDIE MAC,

*Defendant-Appellee,*

FEDERAL HOUSING FINANCE AGENCY,

*Intervenor-Appellee.*

No. 14-1476

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-11302—Sean F. Cox, District Judge.

Decided and Filed: July 6, 2015

Before: MERRITT, STRANCH, AND DONALD, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Vanessa G. Fluker, VANESSA G. FLUKER, ESQ., PLLC, Detroit, Michigan, for Appellants. Steven R. Smith, BRYAN CAVE LLP, Chicago, Illinois, Asim Varma, Howard N. Cayne, Michael A. Johnson, ARNOLD & PORTER LLP, Washington, D.C., for Appellees.

———————————

**OPINION**

———————————

MERRITT, Circuit Judge. This appeal is another in a long line of cases arising from the home mortgage crisis, which has hit Michigan particularly hard. In addition to state law mortgage foreclosure issues, plaintiffs allege violation of their due process rights under the Fifth

Amendment. We conclude that the district court was correct in dismissing both the state law and federal claims, and we affirm the judgment of the district court.

## I. Facts

In 2008, plaintiffs Jerry and Liliane Rush obtained a mortgage loan in the amount of $168,500 from Quicken Loans. As security for the loan, plaintiffs granted a mortgage on the property to Quicken Loans' nominee, Mortgage Electronic Registration Systems, Inc., or, as it is commonly called, "MERS."[1] The note made in favor of Quicken Loans was endorsed in blank to Countrywide Loans FSB and finally by assignment made its way into the hands of Bank of America. The mortgage was conveyed to Bank of America on September 26, 2011, and it was duly recorded on October 11, 2011. Plaintiffs subsequently defaulted on the note and mortgage, and Bank of America foreclosed by advertisement under Mich. Comp. Laws §§ 600.3201-600.3285. Defendant Federal Home Loan Mortgage Corporation, commonly referred to as "Freddie Mac," purchased the property at a foreclosure sale.[2] The homeowners did not exercise their "equity of redemption" by redeeming the property within the six-month statutory redemption period under Michigan law, which expired on May 16, 2012, and Freddie Mac initiated an eviction action in the local court. Plaintiffs challenged the foreclosure, filing defenses to the eviction proceeding and filing a counter-complaint. The counter-complaint was removed to federal court by Freddie Mac where it was joined by intervenor Federal Housing Finance Agency, a federal administrative agency created as conservator to administer the affairs of Freddie Mac and Fannie Mae.[3]

---

[1]MERS is a system for electronically tracking interests in mortgages that are traded on the secondary market. MERS members agree that MERS serves as mortgagee or beneficiary, and when loan ownership or servicing rights are sold from one MERS member to another, MERS remains the titleholder to the security instrument as nominee on behalf of whoever owns the loan. The language on a standard mortgage or deed of trust reads: "MERS is the mortgagee [or beneficiary] of this security instrument. MERS is a separate corporation that acts solely as nominee on behalf of the lender and its successors and assigns."

[2]Freddie Mac and its sister, Fannie Mae, are government–sponsored private enterprises that purchase and securitize residential mortgages. Specifically, Freddie Mac is a federally chartered corporation that was created as part of the Emergency Home Finance Act of 1970. It operates in the secondary mortgage market, purchasing and securitizing residential mortgages to provide mortgage lenders with capital to use to fund additional mortgages.

[3]Congress enacted the Housing and Economic Recovery Act, Pub. L. 110-289, 122 Stat. 2654, on July 30, 2008. The Act created the Federal Housing Finance Agency as the successor agency to the Office of Federal Housing Enterprise Oversight, which had been established in 1992 to regulate Fannie Mae and Freddie Mac, and the Federal Housing Finance Board. Congress designated the Federal Housing Finance Agency "an independent agency of the Federal Government" and authorized the Director to issue certain regulations. The Federal Housing Finance

In their counter-complaint, plaintiffs challenged the foreclosure on four grounds: (1) the foreclosure was fraudulent and violated Michigan statutory law, specifically Mich. Comp. Laws § 600.3204(3), because there was no chain of title evidencing ownership of an interest in the property by Bank of America and it therefore did not have standing to foreclose; (2) Freddie Mac was negligent under Michigan law for failing to evaluate plaintiffs' loan under the Home Affordable Modification Program, also known as "HAMP;" (3) the foreclosure and subsequent eviction were "wrongful" under Michigan law because the foreclosure was invalid under Michigan law; and (4) Freddie Mac violated their Fifth Amendment due process rights because Freddie Mac is a governmental actor due to its regulation by the government and by virtue of being held in conservatorship by the Federal Housing Finance Agency, thereby precluding foreclosure by advertisement.

The district court dismissed the case on the pleadings under Federal Rule of Civil Procedure 12(c). The district court's decision on a motion under Rule 12(c) is analyzed using the same *de novo* standard of review employed for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal quotation marks omitted).

## II. Analysis

Plaintiffs' claims, although somewhat unclear, primarily rest on allegations that the foreclosure should be invalidated because the foreclosure proceedings violated Michigan's foreclosure-by-advertisement statute. Mich. Comp. Laws §§ 600.3201-600.3285. The statute controls the rights of the mortgagee and the mortgagor in the foreclosure process and limits a mortgagor's right to redeem foreclosed property to a six-month period following a sheriff's sale.

---

Agency regulates and supervises Fannie Mae, Freddie Mac, and the twelve Federal Home Loan Banks. 12 U.S.C. § 4511 (2008). Additionally, the Federal Housing Finance Agency serves as conservator or receiver of Fannie Mae and Freddie Mac for purposes of "reorganizing, rehabilitating, or winding up [their] affairs." *Id.* at § 4617(a)(2). The Director of the Federal Housing Finance Agency was given "general regulatory authority over" Fannie Mae and Freddie Mac (as well as the Federal Home Loan Banks and the Office of Finance), and was directed to ensure, among other things, that Fannie Mae and Freddie Mac operate "in a safe and sound manner" and "foster liquid, efficient competitive, and resilient national housing finance markets." *Id.* at § 4513(a)(1)(B)(i); (B)(ii).

Mich. Comp. Laws § 600.3240. When a mortgagor fails to redeem the property within the allotted time, his "right, title, and interest" in and to the property are extinguished. Mich. Comp. Laws § 600.3236. It is undisputed that plaintiffs failed to exercise their statutory right to redeem the foreclosed property before the six-month statutory redemption period expired. As both our court and the Michigan Supreme Court have observed, this fact has significant consequences. "[U]nder Michigan's foreclosure statute, 'all the right, title and interest which the mortgagor had at the time of the execution of the mortgage' vests in the entity that purchased the foreclosed property in the sheriff's sale after the expiration of the redemption period." *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 428 (6th Cir. 2013) (quoting Mich. Comp. Laws § 600.3236 and citing *Piotrowski v. State Land Office Bd.,* 4 N.W.2d 514, 517 (Mich. 1942)). Because plaintiffs did not redeem the property during the statutory redemption period, they must allege "a clear showing of fraud, or irregularity" that "relate[s] to the foreclosure itself" and allege that they were prejudiced by such fraud or irregularity, that is, they must show that they would have been in a better position to preserve their interests absent the fraud or irregularity. *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 337 (Mich. 2012) ("[T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced by [the alleged irregularity]. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute."); *see also Conlin v. Mortg. Elec. Reg. Sys., Inc.*, 714 F.3d 355, 360-62 (6th Cir. 2013)

### A.    Bank of America's Standing to Foreclose under Mich. Comp. Laws § 600.3204(3)

Plaintiffs contend on appeal that Freddie Mac, through its servicing agent, non-party Bank of America, lacked standing to foreclose under Mich. Comp. Laws § 600.3204, because Bank of America was not the owner of record of any interest secured by the mortgage. According to plaintiffs, the alleged lack of notice as to ownership of the mortgage by the foreclosing party, Bank of America, renders the foreclosure void *ab initio* because Bank of America could not comply with Mich. Comp. Laws § 600.3204(3), which states that, "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage."

Plaintiffs' argument is without merit.  MERS, the original mortgagee, assigned the mortgage to Bank of America on September 26, 2011, and it was duly recorded on October 11, 2011.  Notice of the foreclosure and subsequent sheriff's sale, which was scheduled for November 16, 2011, was published in the newspaper and a sign was posted on the property prior to the sale.  In the mortgage they signed, plaintiffs granted MERS the power to assign the mortgage to Bank of America. That assignment was recorded, creating a clear record chain of title.  The mortgage also gave MERS, as mortgagee, the power to initiate foreclosure proceedings, and once assigned, Bank of America, as record holder of the mortgage, also had the power to foreclose under the mortgage.  Plaintiffs also seem to argue that under § 600.3204(3) there must also be a record of who owns the underlying note, as distinguished from the mortgage instrument, but this is also incorrect. The statute requires only a record chain of title for the mortgage, not the underlying debt or note. Mich. Comp. Laws § 600.3204(3) ("If the party foreclosing a *mortgage* by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the *mortgage* to the party foreclosing the mortgage.") (emphasis added).

In addition, even if there were some defect in the chain of title, which there is not, plaintiffs' claim fails because they have not alleged any facts demonstrating the necessary prejudice to make the foreclosure voidable.  *Kim*, 825 N.W.2d at 337.  As previously discussed, to demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute. Plaintiffs make no such showing.  They received an opportunity for six months to become current on the loan and avoid foreclosure.  The failure to redeem the property during the redemption period extinguished any right, title, or interest in the property by plaintiffs.

## B. Ownership of the Note

Plaintiffs also contend that the foreclosing party, here Bank of America, must be the assignee of both the mortgage and the promissory note in order to foreclose.  Under Michigan law, it is lawful for the holder of the mortgage to be different from the holder of the debt.  In *Residential Funding Co., L.L.C. v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011), the Michigan Supreme Court said:

[T]he Legislature's use of the phrase "interest in the indebtedness" to denote a category of parties entitled to foreclose by advertisement indicates the intent to include mortgagees of record among the parties entitled to foreclose by advertisement, *along with parties who "own[ ] the indebtedness" and parties who act as "the servicing agent of the mortgage."*

*Id.* (emphasis added); *see also Hargrow v. Wells Fargo Bank N.A.*, 491 F. App'x 534, 536-37 (6th Cir. 2012).

To the extent plaintiffs also question the chain of title due to the "securitization"[4] of the mortgage or the debt, as discussed above, any severance of the mortgage from the note—even through securitization—had no bearing on Bank of America's right to foreclose as the assignee of MERS. *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102-03 (6th Cir. 2010).

## C. Negligence

In Count II of their counter-complaint, plaintiffs allege that Freddie Mac, which purchased the property at the foreclosure sale, was negligent because it failed to evaluate them for a loan modification under the federal Home Affordable Modification Program, also known as "HAMP."[5] HAMP was established pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5201 *et seq.*, and was designed to help financially struggling homeowners avoid foreclosure by modifying loans. Specifically, plaintiffs allege that Freddie Mac failed to comply

---

[4]Securitization is the packaging of debt into instruments broadly referred to as "mortgage-backed securities." One court has described it this way:

> One could analogize this process to taking raw ingredients and combining them to make bread then selling the slices individually, or putting different kinds of meat into a sausage grinder then selling the individual sausages. What is born from this process are new debt instruments, sold on the open market, that have pooled-and-sliced home loans as their ingredients. Different debt instruments work in different ways, but the basic concept is that the home loan debt gets repackaged and sold to other investors rather than being held by the bank that originated the loan.

*Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1133 (W.D. Wash. 2013).

[5]The entity that initiated foreclosure proceedings against plaintiffs was Bank of America, which is not a party to this action. Although not plainly stated, plaintiffs presumably contend that Freddie Mac, as the purchaser of the property at the foreclosure sale, is the successor in interest to Bank of America. *See* Complaint at ¶ 21 ("Counter Defendant's predecessor servicer Bank of America stated in letters to Plaintiff [sic] that they were still being evaluated for a HAMP modification. . . . Yet Counter Defendant by and through its predecessor servicer proceeded with a foreclosure sale.").

with guidelines established by the United States Department of the Treasury to administer HAMP.

Plaintiffs' negligence claim, based on an alleged violation of HAMP, fails because they cannot establish that Freddie Mac breached a duty owed to them. Plaintiffs have not cited any Michigan case holding that HAMP imposes a legal duty on a lender sufficient to support a claim for common-law negligence. We recently held under almost identical facts that HAMP does not create a private right of action, and that Michigan courts have not recognized that the HAMP regulations impose a duty of care by servicers to borrowers. *Campbell v. Nationstar Mortg.*, No. 14-1751, 2015 WL 2084023, at *9 (6th Cir. May 6, 2015) (unpublished). This case held that under Michigan law, the duties established by the mortgage contract govern the relationship between the parties. Under Michigan law, a homeowner who has defaulted may not simply waive the contract and sue in negligence.[6] Because plaintiffs cannot establish that Freddie Mac owed them a duty under HAMP, their negligence claim fails.[7]

Our opinion is based on the fact that the plaintiffs here have not alleged conduct that would constitute negligent or intentional wrongdoing by the parties in this case under common-law principles, nor have the state courts in Michigan created a cause of action in negligence against lenders or mortgagees in this situation. Without changes in the tort law of Michigan or federal statutory law designed to protect defaulting mortgagors, we are not authorized to impose new liabilities in the field of mortgage law.

### D. Due Process Violation

Plaintiffs also raise a constitutional claim, arguing that the foreclosure violated the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs failed to object to the Magistrate Judge's Report and Recommendation and the district

---

[6]We have previously held in an insurance coverage context that Michigan law may provide for a negligence cause of action because parties to a contract have an "independent duty of care" in the performance of their contractual services "to all those whom the party knew or reasonably should have foreseen would be injured by the party's negligent acts or omissions." *Cleveland Indians Baseball Co., L.P. v. New Hampshire Ins. Co.*, 727 F.3d 633, 638-39 (6th Cir. 2013). However, because plaintiffs in this case have not raised this issue and claim negligence only in terms of an alleged HAMP violation, we need not decide whether to extend such logic to the alleged failure of a mortgage holder to act with reasonable care toward a homeowner.

[7]Even if plaintiffs were harmed by negligence, they failed to establish how any negligent conduct would be attributable to Freddie Mac as opposed to Bank of America.

court did not address this issue in its opinion, so it is waived. Even if the claim was not waived, it would fail on the merits.

The Fifth and Fourteenth Amendments prohibit the deprivation of property by a state actor without due process of law. We recently held that even if Freddie Mac is a government actor by reason of the conservatorship of the Federal Housing Finance Agency, its compliance with Michigan's foreclosure-by-advertisement procedures satisfied the requirements of the Due Process Clause. *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736 (6th Cir. 2015). The Michigan statute fulfills the principles of due process under both common law and Supreme Court case law. The statute requires that a notice be placed in the local newspaper for four consecutive weeks and that a notice be posted in a prominent place on the property. The statute also requires notice of the six-month period after the sale to redeem the property. Mich. Comp. Laws §§ 600.3208, 600.3212. Plaintiffs do not contest that they received the required statutory notice of the foreclosure and subsequent sheriff's sale or that they failed to redeem the property during the statutory redemption period. Therefore, their constitutional claim fails.

For the foregoing reasons, we affirm the judgment of the district court.