NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-334                                          Appeals Court

MILTON R. SANTOS[1]  vs.  U.S. BANK NATIONAL ASSOCIATION, trustee,[2]
& others.[3]


No. 15-P-334.

Suffolk.     February 24, 2016. – July 8, 2016.

Present:  Katzmann, Milkey, & Blake, JJ.


Bank.  Loan.  Mortgage, Real estate, Foreclosure.  Real
    Property, Mortgage.  Notice.  Practice, Civil, Motion to
    dismiss, Summary judgment, Summary process.  Summary
    Process.


    Civil action commenced in the Superior Court Department on
March 28, 2011.

    The case was heard by Heidi E. Brieger, J., on a motion for
summary judgment.

_____

    [1] Also known as Milton R. Dossantos.

    [2] Of the Structured Asset Securities Corporation Mortgage
Pass-Through Certificates, 2006-EQ1.

    [3] U.S. Bancorp and Wells Fargo Bank, N.A., doing business as
America's Servicing Company.  Where Santos has not suggested any
reason to differentiate between the various named defendants in
terms of his theories of liability and the defendants have
presented a unified defense, we collectively refer to all the
defendant parties as "defendants" except where U.S. Bank
National Association acted alone (e.g., in pursuing the
postforeclosure summary process action).

Michael J. Traft (Robert Graves with him) for the plaintiff.

Sean R. Higgins (Michael Stanley with him) for the defendants.

KATZMANN, J.  The plaintiff mortgagor Milton R. Santos appeals from orders of a Superior Court judge dismissing his claim that the mortgagee and mortgage servicing defendants violated G. L. c. 244, § 35A, and granting summary judgment to the defendants on his claim that U.S. Bank National Association (U.S. Bank) negligently processed his loan modification applications made pursuant to the Home Affordable Modification Program (HAMP).  We affirm.

Background.  We recite the facts alleged in Santos's complaint as supplemented by the undisputed facts in the summary judgment record and descriptions of HAMP from case law.

1.  HAMP.[4]  "HAMP was part of Congress's response to the financial and housing crisis that struck the country in the fall of 2008."  Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 772 (4th Cir. 2013).  Acting under authority conferred by the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201 et seq. (and specifically the Troubled Asset Relief Program [TARP], 12 U.S.C. §§ 5211-5241), and in conjunction with

---

[4] The following is but a brief overview of HAMP.  For a thorough and detailed presentation of "background information on the HAMP program," see Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556-557 (7th Cir. 2012).

the Federal Housing Finance Agency, the Federal National Mortgage Association (Fannie Mae), and the Federal Home Loan Mortgage Corporation (Freddie Mac), the Secretary of the Treasury (Secretary) introduced the Making Home Affordable Program in February, 2009.  HAMP, which is administered by Fannie Mae, is part of this initiative.  Markle v. HSBC Mort. Corp. (USA), 844 F. Supp. 2d 172, 176 (D. Mass. 2011).

"HAMP aims to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels. . . .  Under HAMP, loan servicers receive incentive payments for each permanent loan modification completed. . . . Mortgage lenders approved by Fannie Mae must participate in HAMP. . . .  Lenders servicing mortgages not owned or guaranteed by Fannie Mae or Freddie Mac may elect to participate in HAMP by executing a Servicer Participation Agreement with Fannie Mae in its capacity as financial agent for the United States."  Id. at 176-177.  "Loan servicers receive a $1,000 payment for each permanent modification, in addition to other incentives."  Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 229 (1st Cir. 2013).

"The Secretary negotiated Servicer Participation Agreements (SPAs) with dozens of home loan servicers . . . .  Under the terms of the SPAs, servicers agreed to identify homeowners who were in default or would likely soon be in default on their

mortgage payments, and to modify the loans of those eligible under the program." Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556 (7th Cir. 2012). On August 20, 2009, U.S. Bank executed an SPA with Fannie Mae. "The Department of the Treasury and Fannie Mae have issued a series of directives that provide guidance to mortgage servicers implementing HAMP. Under the guidelines, servicers may identify and solicit borrowers who are in default on their mortgage payments, or soon will be, and evaluate their eligibility to participate in HAMP." Markle, 844 F. Supp. 2d at 177.

"HAMP urges banks and loan servicers to offer loan modifications to eligible borrowers with the goal of reducing [their] mortgage payments to sustainable levels, without discharging any of the underlying debt." Young, 717 F.3d at 228 (quotation omitted). Under the guidelines, HAMP-eligible homeowners are offered a trial period plan (TPP) in which the homeowner undertakes to pay modified mortgage payments for a three-month trial period. "The standard-form TPP represents to borrowers that they will obtain a permanent modification at the end of the trial period if they comply with the terms of the agreement." Markle, 844 F. Supp. 2d at 177. Freddie Mac "is the sole compliance agent responsible for enforcing HAMP." Spaulding, 714 F.3d at 774.

"Perhaps not surprisingly, given the large stakes for financially stressed homeowners, and in light of widespread media reports of bureaucratic bungling (and worse) on the part of lenders, mortgage servicers, and their myriad agents, HAMP has given rise to a large number of civil claims by mortgagors against financial industry firms."  Ibid.

2.  Santos's mortgage history.  On April 28, 2006, Santos purchased a residential property in Revere (property) for $368,000.  He financed the purchase with two mortgage loans that together covered 100 percent of the purchase price.[5]  After an assignment from the initial lender, Santos's first mortgage in the amount of $294,400 was held by U.S. Bank, as trustee for a securitized pool of mortgages, and serviced by Wells Fargo Bank, N.A., doing business as America's Servicing Company.

Santos defaulted on his mortgage in 2008.  Between 2009 and 2010, the defendants evaluated Santos several times for a permanent loan modification under HAMP.  Despite Santos's participation in a three-month HAMP TPP, the defendants ultimately denied all of Santos's applications for a permanent loan modification under HAMP.  In April, 2010, the defendants offered Santos an in-house modification (that is, not a HAMP modification) that Santos declined.

---

[5] Only one of those mortgage loans is at issue here.

On July 22, 2010, the defendants foreclosed on the mortgage and purchased the property at the foreclosure sale for $212,415.

3. <u>Procedural history</u>. Subsequent to foreclosure, on March 7, 2011, the defendants initiated a summary process action in the District Court. Santos answered the summary process complaint, asserting, inter alia, that he was in the process of bringing a case in Superior Court against the defendants for various claims, including a violation of G. L. c. 244, § 35A.[6]

On March 29, 2011, Santos in fact filed a verified complaint in Superior Court alleging that the defendants negligently failed to adhere to HAMP guidelines in processing his loan modification applications (count I) and seeking a declaration that the foreclosure was invalid because the defendants failed to send him notice of his ninety-day right to cure prior to foreclosure in violation of G. L. c. 244, § 35A(<u>a</u>)

---

[6] General Laws c. 244, § 35A, has gone through various iterations. As applicable here, it provided for a ninety-day right to cure: "Any mortgagor of residential real property located in the commonwealth . . . shall have a 90 day right to cure a default of a required payment as provided in such residential mortgage or note secured by such residential real property by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of such mortgage. . . . The mortgagee . . . shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment . . . by any method authorized by this chapter or any other law until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor." G. L. c. 244, § 35A(<u>a</u>) & (<u>b</u>), inserted by St. 2007, c. 206, § 11 (effective May 1, 2008).

(count II).[7]  In his prayer for relief, Santos sought, inter alia, orders declaring the foreclosure void and restoring title to his name.  The complaint noted the pendency of eviction proceedings in the "Housing Court."

Meanwhile, the summary process action in District Court proceeded, culminating in a judgment in favor of U.S. Bank for possession on December 1, 2011.  Santos's appeal from the judgment of possession was dismissed.[8]

The defendants moved to dismiss the Superior Court action pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), on June 7, 2011, before the resolution of the summary process action.  Where that motion apparently remained pending beyond the conclusion of the summary process case, the defendants ultimately filed a supplemental memorandum in support of dismissal after the District Court judgment issued.

---

[7] Additional counts for declaratory relief based on U.S. Bank's standing to foreclose and for equitable production of the original note, which were dismissed at the Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), stage, are not before us on appeal.

[8] The order allowing the motion to dismiss the appeal does not reflect the basis for the dismissal of the summary process appeal.  Counsel for the defendants informed this court at oral argument that the appeal was dismissed for failure to pay an appeal bond.  The defendants' supplemental memorandum in support of their motion to dismiss Santos's complaint in this case states that the summary process appeal was dismissed for failure to prosecute.

In an order dated January 3, 2013, the Superior Court judge dismissed Santos's § 35A claim on the basis of claim preclusion where the claim could have been brought in the summary process action between the identical parties. However, the judge denied the defendants' motion to dismiss Santos's negligence claim, allowing it to proceed based on her conclusions that, under Federal law, Santos is a third-party beneficiary under the SPA between Fannie Mae and U.S. Bank and that, as a third-party beneficiary, Santos could pursue a claim for negligent performance of the duties imposed by the SPA. However, when the case later came before her for summary judgment on the negligence claim, the same judge granted summary judgment in favor of the defendants on the basis that, under the economic loss theory as articulated in FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993), Santos had not presented evidence of a legally cognizable injury that would support his negligence claim.

Discussion. Although the orders on appeal arise from different stages of the litigation, we review the allowance of motions to dismiss and motions for summary judgment de novo. "We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of

law. . . . De novo review also applies to the judge's dismissal of the plaintiffs' complaint under Mass.R.Civ.P. 12(b) . . . (6)." Pinti v. Emigrant Mort. Co., 472 Mass. 226, 231 (2015) (quotation omitted). To survive a motion to dismiss, the complaint must include "factual 'allegations plausibly suggesting' . . . an entitlement to relief." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting from Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).

Although the judge did not have the benefit of some of the recent opinions of the Supreme Judicial Court in the mortgage context, we are satisfied that the § 35A claim was properly dismissed under the circumstances here where Santos should have litigated it in the summary process action. Because we agree with the overwhelming weight of authority that borrowers cannot maintain negligence actions against lenders for failure to adhere to HAMP guidelines, we conclude that Santos's negligence claim should have been dismissed pursuant to the rule 12(b)(6) motion and was therefore properly, if belatedly, resolved in the defendants' favor on summary judgment.

1. Right to cure violation. Santos contends that the defendants failed to provide him with notice of his right to cure the mortgage default as required under G. L. c. 244, § 35A. The judge correctly determined that res judicata bars Santos

from pursuing this claim now when he could have done so in the District Court summary process action.

a. Res judicata. "The term 'res judicata' includes both claim preclusion and issue preclusion. Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action. This is based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit. The invocation of claim preclusion requires three elements: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Kobrin v. Board of Registration in Med., 444 Mass. 837, 843 (2005) (quotations and citation omitted). "It is the general rule that when two different actions involving the same parties and the same claim are pending at the same time, the final judgment first rendered is entitled to res judicata effect in the second action, regardless of which was commenced first." Wright Mach. Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 690 (1974), citing Restatement of Judgments § 43 (1942) and Restatement (Second) of Judgments § 41.1 (1982).

The elements of claim preclusion are satisfied here. The parties are identical or in privity with those in the summary

process action.  The cause of action was also sufficiently identical where Santos has framed his § 35A claim as one that would establish that the foreclosure was invalid, which would also have defeated U.S. Bank's title in the summary process action.  That summary process action proceeded to final judgment.  The summary process judgment, which became final when Santos's appeal was dismissed, established U.S. Bank's superior title and subsumed all related claims, including the question whether any defect in the notice of right to cure undermined U.S. Bank's title.

Santos contends that claim preclusion is inapplicable to his § 35A claim because he preserved the issue by explicitly reserving his right to bring an action in Superior Court for violation of § 35A in his summary process answer.  However, litigants cannot unilaterally reserve rights to bring claims in later actions.  Rather, the preservation of claims in this manner is the exclusive province of the court hearing the action.  "Under a generally accepted exception to the res judicata doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action" (emphasis added).  Perroncello v. Donahue, 64 Mass. App. Ct. 564, 570 (2005), S.C., 448 Mass. 199 (2007), quoting from Apparel Art Intl., Inc. v. Amertex Enterprises Ltd., 48 F.3d 576, 586 (1st Cir. 1995), and

citing Restatement (Second) of Judgments § 26(1)(b) (1982). See Chadbourne v. Chadbourne, 245 Mass. 383, 384 (1923) (res judicata not applicable to question that "not only was not litigated but was expressly reserved by the court"). Absent a judicial reservation, res judicata principles prohibit parties from proceeding by way of "piecemeal litigation, offering one legal theory to the court while holding others in reserve for future litigation should the first theory prove unsuccessful." Bagley v. Moxley, 407 Mass. 633, 638 (1990) (claim that was "capable of being raised" and "should have been raised" in prior action is "barred from relitigation" in subsequent action).

Santos's opposition to application of res judicata is further weakened by the absence of any plausibly legitimate reason for trying to pursue piecemeal litigation. In his answer to the summary process action, Santos noted that he was "in the process of bringing a court case against [U.S. Bank] alleging wrongful foreclosure and the following claims relating to the mortgage on the property and the underlying loan: . . . Violation of [G. L. c. 244, §] 35A." Santos did not indicate in any way that he had doubts about the propriety of raising such claim in a summary process action.

Santos also did not suggest in his summary process answer, or any other filing, that he doubted the District Court's jurisdiction. The elucidation provided by subsequently decided

cases does not support Santos's claim -- never raised in either proceeding below -- of jurisdictional confusion.  For example, Bank of America, N.A. v. Rosa, 466 Mass. 613 (2013), may have clarified the expanded jurisdiction of the Housing Court, but U.S. Bank brought its summary process action in District Court. Santos has not suggested any basis to doubt the District Court's jurisdiction even prior to Rosa.  See G. L. c. 218, § 19, as amended by St. 2004, c. 252, § 5 ("Notwithstanding the limitation of $25,000, or other amount ordered by the supreme judicial court, the district courts may proceed with actions for money damages in any amount in summary process actions"); G. L. c. 218, § 19C, as amended by St. 2004, c. 252, § 8 ("The district court and Boston municipal court departments of the trial court shall have the same equitable powers and jurisdiction as is provided for the superior court pursuant to chapter 214 and the same authority with regard to declaratory judgments as is provided for the superior court pursuant to chapter 231A for the purpose of the hearing and disposition of summary process actions and of civil actions for money damages under section 19 of this chapter"); G. L. c. 231, § 31, as amended by St. 1973, c. 1114, § 164 ("In the district courts, the defendant may allege in defense any facts which would entitle him in equity to be absolutely and unconditionally relieved against the plaintiff's claim or cause of action or

against a judgment recovered by the plaintiff in such action").
Santos has not claimed that he needed Rosa's discussion of G. L.
c. 231, § 31, to understand the statute's import for his case.
See Rosa, 466 Mass. at 620 ("Section 31 allows a summary process
defendant to raise equitable defenses in the District Court that
may 'absolutely and unconditionally' defeat the plaintiff's
claim.  Such defenses are not limited to failure to comply
strictly with the power of sale of a mortgage.  They may
include, without limitation, the defense of payment of the
mortgage note").

Finally, where Santos requested, but did not receive, a
stay of the summary process action, it was unreasonable for him
to believe that he could unilaterally hold back certain claims
for a later date or an alternate forum.  Santos concluded his
summary process answer by requesting that the District Court
"stay all Summary Process proceedings in this Court while [he]
files a complaint in the Superior Court to quiet title on [his]
home and bring the accompanying claims against [U.S. Bank]."
There is no indication in the record that the District Court
ever acted on this request.  On appeal, Santos himself reports
that his attempt to stay the summary process action by seeking a
temporary restraining order in Superior Court was unsuccessful.

It is not acceptable for a homeowner mortgagor to seek to
force a foreclosing lender to litigate in multiple venues across

separate proceedings by unilaterally holding certain claims back from summary process when those claims are within the summary process court's jurisdiction and assertedly essential to the determination of superior title. "Res judicata will be employed by the courts to prevent the splitting of a cause of action where the party to be precluded (here [Santos]) had both the opportunity and the incentive to litigate all related matters fully in the original lawsuit." Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 567 (2004). See id. at 562 (applying Federal res judicata law and concluding that dismissal of State court action after resolution of previously filed Federal action between same parties arising from same nucleus of operative facts was appropriate response to plaintiff's "disfavored claim splitting contrary to well-established doctrine and policy"). We therefore conclude that application of res judicata is appropriate here where it will "serve to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" Bagley, 407 Mass. at 636, quoting from Anderson v. Phoenix Inv. Counsel of Boston, Inc., 387 Mass. 444, 449 (1982).

Furthermore, the policy considerations underlying res judicata generally are particularly applicable here as they are consistent with "the legislative goal of 'just, speedy, and

inexpensive' resolution of summary process cases," which policy "is compromised if the [summary process court] must stay summary process proceedings while litigation on the validity of the foreclosure proceedings continues in another court." Bank of N.Y. v. Bailey, 460 Mass. 327, 334 (2011). See Federal Natl. Mort. Assn. v. Rego, 474 Mass. 329, 339 (2016) (presentation of all defenses and counterclaims, including those not affecting right to possession, before the summary process judge "conserves judicial resources because the [summary process] judge already will be familiar with the issues presented; it also reduces further expenditure of resources by a summary process defendant, who otherwise would be required to file a separate action in another court"). Santos's attempt to force the defendants to litigate on two fronts was therefore "precisely the type of unnecessary delay and inefficiency that the Legislature intended to eliminate when it reorganized the trial courts in the Commonwealth." Bailey, 460 Mass. at 334.

b. Impact of recent Supreme Judicial Court decisions. Santos also contends that his claim cannot be precluded where he believes that the concurring opinion in U.S. Bank Natl. Assn. v. Schumacher, 467 Mass. 421 (2014), decided after the relevant events here, supports the approach he pursued below. But Santos's reliance on Schumacher is misplaced. In Schumacher, the Supreme Judicial Court held that a borrower's "challenge to

the notice [issued pursuant to G. L. c. 244, § 35A,] should have been raised in an independent equity action in the Superior Court, not in a postforeclosure summary process action in the Housing Court where the only legal issue for the court is whether the mortgagee obtained title to the property in strict accordance with the power of sale." Id. at 429. But the court also stated that "the proper avenue by which a homeowner can challenge a mortgagee's compliance with G. L. c. 244, § 35A, is either filing an independent equity action in the Superior Court, or asserting counterclaims pertaining to § 35A in response to the mortgagee's postforeclosure summary process action." Id. at 422 n.4.

In his concurring opinion in Schumacher, then Justice Gants provided further explication of the implications of the majority's opinion. He wrote that "where a defendant in the summary process action claims a violation of the requirements in § 35A to provide timely and adequate written notice of the right to cure the default, the defendant must prove more than a mere violation of § 35A to defeat the eviction because, as the court notes, § 35A is not one of the statutes relating to the foreclosure of mortgages by the exercise of a power of sale. Rather, to defeat the eviction, the defendant must prove that the violation of § 35A rendered the foreclosure so fundamentally unfair that she is entitled to affirmative equitable relief,

specifically the setting aside of the foreclosure sale for reasons other than failure to comply strictly with the power of sale provided in the mortgage."  Id. at 432-433 (Gants, J., concurring) (quotations omitted).[9]

We understand Schumacher, as explicated by Justice Gants, to explain that a homeowner claiming a right to cure notice violation needs to take affirmative action in Superior Court prior to foreclosure and certainly prior to finding herself a defendant in a postforeclosure summary process action if she hopes to halt the foreclosure process by showing something less than a violation of § 35A that would render foreclosure fundamentally unfair.  See Bank of N.Y. Mellon Corp. v. Wain, 85 Mass. App. Ct. 498, 501 (2014).  "[T]he appropriate avenue for a borrower to raise a challenge to the form of notice given under § 35A is by means of an equitable action, prior to foreclosure, seeking to enjoin the foreclosure" (emphasis added).  Haskins v. Deutsche Bank Natl. Trust Co., 86 Mass. App. Ct. 632, 634 (2014), citing Schumacher, 467 Mass. at 422 n.4.  See Gold Star Homes, LLC v. Darbouze, 89 Mass. App. Ct. 374, 379-380 (2016).

---

[9] "The majority opinion in Schumacher stated that the concurring opinion 'accurately reflects the practical consequences of our decision today in conjunction with our decision in Bank of Am., N.A. v. Rosa, [466 Mass. 613 (2013)].' Schumacher, supra at 429 n.12.  Thus, the passage from the concurring opinion quoted in the text reflects the unanimous view of the court." Bank of N.Y. Mellon Corp. v. Wain, 85 Mass. App. Ct. 498, 501 n.8 (2014).

If a homeowner waits until he is being evicted in a postforeclosure summary process action, he will need to show a violation of § 35A that rises to the level of fundamental unfairness.[10]  Accordingly, the summary process action was indeed the proper venue for Santos to litigate his § 35A claim after foreclosure.  There was no need for him to go to Superior Court.

At oral argument, Santos suggested that it would be unfair to hold him to a procedural landscape that had yet to fully take shape when he sought to pursue the § 35A claim in Superior Court.  He contends that the summary process court's jurisdiction to deal with the equity complaint he sought to pursue in Superior Court was questionable at the time.  This is no doubt a challenging area of the law.  See Schumacher, 467 Mass. at 431 (Gants, J., concurring) ("[O]ur jurisprudence in this area of law is difficult for even attorneys to understand").  Indeed, Schumacher clarified the role of § 35A claims in summary process proceedings.  This clarification, however, suggests that Santos would have had even more incentive to raise the § 35A claim in a summary process action prior to Schumacher's determination that § 35A is not "part and parcel of

---

[10] As we clarified in Haskins:  "The fundamental unfairness standard discussed in Schumacher applies when a § 35A violation is raised in a postforeclosure summary process action, instead of properly in a preforeclosure equity action."  86 Mass. App. Ct. at 637 n.11, citing Schumacher, 467 Mass. at 433 (Gants, J., concurring).

foreclosure proceedings by the exercise of a power of sale." Schumacher, 467 Mass. at 430.

Santos's own briefing in Superior Court demonstrates this very point.  In his supplemental memorandum in opposition to the defendants' motion to dismiss, Santos contended that:

> "Massachusetts foreclosure law includes the right-to-cure notice in a mortgage's power of sale requirements. . . .  [B]ecause a foreclosure cannot begin until the right-to-cure notice requirement is complied with, G. L. c. 244, § 35A is part of the mortgage's power of sale requirements. . . .  G. L. c. 244, § 35A is part of the 'statutes relating to the foreclosure of mortgages by the exercise of a power of sale.' . . . Plaintiff's claim is based upon the 'strict compliance' standard required for non-judicial foreclosures."

The established law was already clear that postforeclosure summary process defendants could put the plaintiff's title in issue.  See Bank of N.Y. v. Bailey, 460 Mass. at 333 ("Challenging a plaintiff's entitlement to possession has long been considered a valid defense to a summary process action for eviction where the property was purchased at a foreclosure sale").  See also New England Mut. Life Ins. Co. v. Wing, 191 Mass. 192, 195 (1906); Sheehan Constr. Co. v. Dudley, 299 Mass. 51, 53 (1937); Wayne Inv. Corp. v. Abbott, 350 Mass. 775, 775 (1966).  Santos was well aware of the state of the law as he cited several cases standing for this very proposition in his summary process answer, including language in Wayne Inv. Corp., 350 Mass. at 775, that a bank's acquisition of title in strict

compliance with the power of sale "is subject to challenge" in a summary process action.

Where Santos believed that § 35A was included in the mortgagee's power of sale requirements and he understood that strict compliance with the power of sale was a defense to summary process, he faces no unfairness in being held to litigate his § 35A claim in the summary process action.

2. Negligent loan modification processing. Santos contends that the defendants were negligent in their handling of his applications for HAMP loan modification. This claim fails as a matter of law and should have been dismissed pursuant to the defendants' rule 12(b)(6) motion.

To prevail on a claim for negligence, Santos must prove: (1) a legal duty owed to him by the defendants; (2) a breach of that duty; (3) causation; and (4) an actual loss. Delaney v. Reynolds, 63 Mass. App. Ct. 239, 241 (2005). Existence of a duty in a negligence case is "a question of law." Cottam v. CVS Pharmarcy, 436 Mass. 316, 320 (2002).

It is now well-established that, as a matter of law, HAMP does not create a duty of care owed by mortgagees to mortgagors. See, e.g., MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495-496 (1st Cir. 2013) (decided subsequent to judge's order on motion to dismiss here). The rejection by the United States Court of Appeals for the First Circuit (First Circuit) of HAMP-

based negligence claims is consistent with that of the majority of Federal court decisions in Massachusetts (before and after MacKenzie) as well as across the country.  The consensus among these courts is that there is no private right of action under HAMP[11] and that borrowers are not intended third-party beneficiaries of SPAs or similar contracts between lending banks and Fannie Mae.[12]  Although the concepts of private rights of action, intended beneficiary status, and duty of care are all somewhat interconnected in the context of HAMP-based negligence claims, the former two are clearly questions of Federal law while the latter is resolved with reference to State common-law principles.  Nonetheless, the clear trend of Federal courts applying State law is that neither HAMP nor the relationship between a borrower and her servicer/lender imposes any duty of care owed by lending banks and servicers to borrowers.  See, e.g., Wigod, 673 F.3d 547 (applying Illinois law); Spaulding, 714 F.3d 769 (applying Maryland law); Milton v. U.S. Bank Natl. Assn., 508 Fed. Appx. 326 (5th Cir. 2013) (per curiam) (applying Texas law); Rush v. Freddie Mac, 792 F.3d 600 (6th Cir. 2015)

---

[11] See Wigod, 673 F.3d at 559 n.4 ("[c]ourts have uniformly rejected" claims asserting rights arising under HAMP itself "because HAMP does not create a private federal right of action for borrowers against servicers").

[12] See Wigod, 673 F.3d at 559 n.4 (most but not all courts have held "that borrowers were not intended third-party beneficiaries of the SPAs") (collecting cases).

(applying Michigan law); Markle, 844 F. Supp. 2d at 185 (declining "the invitation to recognize in the HAMP guidelines a new duty of care, thus far unrecognized by Massachusetts courts"); Brown vs. Bank of America Corp., U.S. Dist. Ct., No. 10-11085 (D. Mass. Mar. 31, 2011) ("[W]hile violation of a regulation such as HAMP may provide evidence of a breach of a duty otherwise owed, it does not create such a duty in the first place"); Souza vs. Bank of America, U.S. Dist. Ct., Natl. Assn., No. 1:13-cv-10181-PBS (D. Mass. July 8, 2013) ("Every Court of Appeals that has addressed the issue has concluded that HAMP does not provide an implied right of action under federal law. . . . Regarding negligence claims, every Court of Appeals that has addressed the issue has denied HAMP-based negligence claims") (collecting cases); Almeida vs. U.S. Bank Natl. Assn., U.S. Dist. Ct., No. 12-11565-RWZ (D. Mass. Mar. 10, 2014).[13] We agree with the reasoning and analysis of these courts and conclude that, under Massachusetts law, HAMP does not impose a duty of care owed by lenders and servicers to borrowers.

In declining to dismiss Santos's negligence claim pursuant to rule 12(b)(6), the judge concluded that Santos had alleged a

---

[13] Santos cites Speleos v. BAC Home Loans Servicing, L.P., 755 F. Supp. 2d 304, 311 (D. Mass. 2010), where the court found that "a plausible negligence claim" had been stated for the lender's failure to comply with HAMP even though HAMP does not include a private right of action. However, Speleos was decided prior to the First Circuit's opinion in MacKenzie.

plausible claim for negligence based on her determination that Santos was a third-party beneficiary of the SPA between U.S. Bank and Fannie Mae.  The First Circuit has reached the opposite conclusion.  See MacKenzie, 738 F.3d at 492 (borrowers may not enforce HAMP guidelines by claiming third-party beneficiary status under SPA).  In our view, the basis of the judge's denial of the motion to dismiss as to the negligence claim is no longer viable.  See Markle, 844 F. Supp. 2d at 180 ("[I]t is . . . generally established that federal common law controls the interpretation of contracts entered into pursuant to federal law and to which the United States is a party"); Seidel vs. Wells Fargo Bank, N.A., U.S. Dist. Ct., No. 12-10766-RWZ (D. Mass. July 3, 2012) ("HAMP is a federal program and as such interpretation of the HAMP contract is controlled by federal law").

Thus, if Santos's negligence claim is to survive, he must identify an alternate legal basis for the existence of a duty of care.  Santos has failed to establish the existence of such a duty.[14]

---

[14] Although Santos appears to rely on the judge's third-party beneficiary theory as the source of the defendants' duty in his appellate brief, at oral argument Santos stated that he was not relying on a third-party beneficiary theory.  The only other authority Santos relied on in his brief for the source of the defendants' duty was Speleos v. BAC Home Loans Servicing, L.P., 755 F. Supp. 2d 304, 311 (D. Mass. 2010), which is a case whose holding has essentially been overruled by the First

In general, "[t]he relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law."  MacKenzie, 738 F.3d at 495.  Cf. Clark v. Rowe, 428 Mass. 339, 346 (1998) (agent acting for bank that refinanced loan on property "owed no duty of care to the plaintiff borrower"); Shawmut Bank, N.A. v. Wayman, 34 Mass. App. Ct. 20, 24 (1993) (lending bank owes no duty to exercise reasonable care to guarantor on commercial loan).

There are some exceptions to this general rule.  For example, mortgage holders do in fact have a duty to "act in good faith and must use reasonable diligence to protect the interests of the mortgagor" in the context of an extrajudicial foreclosure and exercise of power of sale.  Williams v. Resolution GGF Oy, 417 Mass. 377, 382-383 (1994) (quotation omitted).  See West Roxbury Co-Op. Bank v. Bowser, 324 Mass. 489, 492 (1949) ("It is familiar law that a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor").  Lenders also have a duty of good faith and fair dealing in the performance of their obligations under the mortgage.  See

_____

Circuit.  See note 13, supra.  At oral argument, Santos for the first time claimed that he was relying on the duty of good faith and fair dealing, that this is a "negligence contract matter," and that the defendants voluntarily assumed a duty.  We do not address arguments raised for the first time at oral argument. See Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 50 n.7 (1998); Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

Shawmut, 34 Mass. App. Ct. at 25 ("[U]nder Massachusetts law, every contract contains an implied covenant of good faith").

However, neither the implied covenant nor the duties arising from foreclosure extends to preforeclosure loan modification processing where the mortgage loan documents do not themselves contemplate such modifications.[15]  See MacKenzie, 738 F.3d at 493 ("[I]n the event of foreclosure, the existence of a duty of good faith is tied directly to the mortgagee's contractual right to exercise a power of sale"); Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004) (covenant of good faith and fair dealing may not "be invoked to create rights and duties not otherwise provided for in the existing contractual relationship").[16]  "Nor can the mortgage and promissory note be said to incorporate the HAMP guidelines or impose on the servicer a duty to offer a HAMP modification, as the documents were executed before the EESA was enacted."  Markle, 844 F. Supp. 2d at 183 n.11.

In the absence of a duty of care owed to him by the defendants, Santos's negligence claim fails even if we assume that he could show statutory or regulatory violations in

---

[15] Santos has never argued that his mortgage includes any modification requirement.

[16] To the extent it represents an actionable contract of its own, a point on which we express no opinion, Santos has not alleged any breach of the implied covenant of good faith and fair dealing under the TPP.

connection with the defendants' processing of his HAMP modification applications because "statutory or regulatory violations cannot give rise to a negligence claim when there is no independent duty of care between the parties." MacKenzie, 738 F.3d at 495. HAMP itself does not provide that duty of care. See Larivaux vs. Bank of America, N.A., U.S. Dist. Ct., No. 12-11172-FDS (D. Mass. June 6, 2013) ("Because no duty of care is established by the HAMP guidelines, plaintiff has not set forth a plausible claim for negligence"). In affirming the dismissal of a HAMP-based negligence claim, the First Circuit further explained that "[w]here an independent duty of care exists, the violation of a statute or regulation can provide evidence of a breach of that duty, even if the statute or regulation itself does not create a private right of action. But in the absence of an independent duty, a plaintiff cannot proceed with a negligence claim based solely on a statutory or regulatory violation." MacKenzie, 738 F.3d at 496.

Because we conclude that Santos's negligence claims falter on the element of duty, we need not address the defendants' additional contentions regarding infirmities on other elements of the claim.[17]

---

[17] That Santos cannot look to a private right of action, third-party beneficiary principles, or common-law negligence does not necessarily mean that borrowers are completely without a vehicle by which to seek relief for alleged HAMP violations.

> Order allowing motion to
> dismiss affirmed.
>
> Order allowing defendant's
> motion for summary judgment
> affirmed.

---

As the defendants acknowledged at oral argument, some courts have allowed claims under G. L. c. 93A grounded in alleged HAMP violations to proceed beyond the rule 12(b)(6) stage.  See, e.g., Rosa, 466 Mass. at 616, 625 (holding that Housing Court had jurisdiction to hear 93A claim based on HAMP violations in postforeclosure summary process action but not passing on viability of claim itself); Markle, 844 F. Supp. 2d at 185-186 ("Other courts in this district have also concluded that the absence of a private right to enforce HAMP does not automatically preclude chapter 93A claims predicated on the failure to comply with HAMP obligations") (collecting cases); Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 256 (D. Mass. 2011) ("HAMP violations can give rise to a viable 93A claim if the activity would be independently actionable under Chapter 93A as unfair and deceptive").  Cf. Wigod, 673 F.3d at 575 (reversing dismissal of claim under Illinois Consumer Fraud and Deceptive Business Practices Act).

Courts have also recognized potential breach of contract claims arising from the HAMP TPP.  See, e.g., Wigod, 673 F.3d at 566; Young, 717 F.3d at 235; Markle, 844 F. Supp. 2d at 182-183 (collecting cases).

Where Santos has not raised claims alleging a breach of contract with respect to the TPP or a violation of c. 93A, we do not address their hypothetical viability.