NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-448

TOWN OF CHATHAM

<u>vs</u>.

CHATHAM SERGEANTS AND PATROL OFFICERS UNION, M.C.O.P., LOCAL 294.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

The plaintiff, town of Chatham (town), appeals from the denial of its motion to vacate an arbitration award and from the allowance of the cross motion by the defendant, Chatham Sergeants & Patrol Officers Union, M.C.O.P., Local 294 (union), to affirm that same award. In 2016, the town, the union, and Andrew Hutton, a Chatham police officer, entered into a "settlement and last chance agreement" (settlement agreement) and a last chance agreement (LCA) that was incorporated therein. In essence, the two agreements operated to give Hutton a last chance to avoid termination in exchange for relinquishing certain rights. Among other things, Hutton agreed that, were he to be terminated for violating the LCA, he and the union relinquished the right to grieve under the collective bargaining

agreement (CBA) "except on the issue of whether . . . Hutton engaged in conduct identified herein or in the Last Chance Agreement."  Hutton and the union also agreed to release the town from various claims, including claims under the CBA.  In addition, the settlement agreement contained an integration clause providing that the agreement could not be "modified, amended, or otherwise affected except by a writing signed by all parties hereto."

After investigating a citizen complaint about Hutton's conduct on May 14, 2019, the town determined that Hutton had violated the LCA and notified him of his termination.  The union grieved the termination, and the matter was heard by an arbitrator who concluded that Hutton's conduct did not rise to the level of a violation of the LCA.  The arbitrator then proceeded to consider whether Hutton's conduct warranted his discharge under the "just cause" standard contained in the CBA.  The arbitrator concluded that termination was not warranted under the just cause standard and imposed a one-week disciplinary suspension instead.

The central issue in this appeal is whether the arbitrator exceeded the scope of his authority.  Because the arbitrator went beyond the scope of arbitration to which the parties agreed in the settlement agreement and the LCA, we vacate the judgment entered in the Superior Court confirming the award in its

2

entirety pursuant to G. L. c. 150C, § 11 (d), and for the reasons explained below, we order that a new judgment be entered confirming the award in part.

Background.  Hutton was rehired as a Chatham police officer in 2007.[1]  Thereafter, Hutton received several disciplinary suspensions, warnings, and written reprimands, as well as rehabilitative counseling to improve his performance.  In October 2016, the department contemplated terminating Hutton for alleged violations of various Chatham police department (department) rules and regulations (rules and regulations).  In lieu of termination, however, on October 11, 2016, the town, Hutton, and the union, entered into the settlement agreement and the LCA, under which Hutton agreed to a variety of things, including a twelve-day disciplinary suspension.  In addition, the settlement agreement contained the following provisions:

> "Last Chance:  [Hutton] acknowledges that this is his last chance and agrees not to engage in any misconduct or conduct identified outlined [sic] in the 'Last Chance Agreement.'  A 'Last Chance Agreement' is attached hereto and incorporated by reference herein. . . .  Hutton agrees that if he violates any part of this Agreement, the Town shall have the right to terminate his employment forthwith.  Such termination by the Town shall not be grievable or arbitrable under the parties' collective bargaining agreement except on the issue of whether or not [Hutton] engaged in conduct identified herein or in the Last Chance Agreement."

---

[1] Hutton had previously been a member of the department from 2001 to 2003.

The LCA, which was incorporated by reference into the settlement

agreement, repeated Hutton's and the union's acknowledgement

that "this [wa]s [Hutton's] last chance" and specified that the

town was entitled to terminate Hutton should he violate any of

six specific provisions of the department's rules and

regulations.  Those six provisions are set out in the margin.[2]

---

[2]

"1.  Rule 5.01 -- Neglect of Duty:  'Officers shall not fail to perform, as directed, all lawful duties required by constituted authority, notwithstanding the officer's normal assignment of duties and responsibilities.'

"2.  Rule 5.02 (c) -- Incompetence:  'No Officer shall fail to maintain sufficient competency to perform his duties and to assume the responsibilities of his position. Incompetence may be demonstrated by, but not limited to, the following[:] . . . the failure to conform to work standards established for the officer's rank[,] grade, or position.'

"3.  Rule 6.9 -- Truthfulness:  'Officers shall speak the truth at all times.'

"4.  Rule 7.01 -- Insubordination:  'Officers shall not be insubordinate.  Insubordination shall include:  any failure or deliberate refusal to obey a lawful order (written or oral) given by a Superior Officer.'

"5.  Rule 9.17 -- Reports:  'Officers shall promptly and accurately complete all reports and forms required by the Department.  Before leaving the station house at the end of his tour, [an] officer shall complete all reports and forms which pertain to events occurring during the concluded tour.'

"6.  Rule 12.2 -- Falsifying Records:  'Officers shall not knowingly or willingly enter or cause to be entered upon a police report or police record any inaccurate, false or improper information.'"

The LCA further provided that, should Hutton violate any of those six provisions:

> "Hutton and the [u]nion agree that the [t]own shall have the right to terminate his employment forthwith. Such termination by the [t]own shall not be grievable or arbitrable under the parties' collective bargaining agreement expect on the issue of whether or not [Hutton] engaged in conduct identified herein."

The LCA was to remain in effect for five years after its execution, after which it would expire of its own terms.

In addition to the terms and provisions we have set out above, the settlement agreement contained a release from Hutton running to the town and also an integration clause. As to the former, Hutton released the town

> "from any and all claims, known or unknown, arising out of or related to the issuance of the suspension and the Last Chance Agreement. [Hutton's] release of claims includes, but is not limited to[,] . . . claims under any collective bargaining agreement. [Hutton] agrees that he will not file or participate in any grievance under the collective bargaining agreement based on the [t]own's enforcement of this Agreement or the Last Chance Agreement."

The settlement agreement's integration clause provided that the document contained the parties' entire agreement, superseding any prior agreements or understandings. Importantly, it also provided that the settlement agreement "may not be modified, amended, or otherwise affected except by a writing signed by all parties hereto."

5

On May 14, 2019 -- while the LCA was still in effect -- Hutton, who was on traffic duty, had an interaction with a Chatham resident (resident or citizen) that prompted her to write a letter of complaint to the department. After receiving the citizen's letter and sending a sergeant to speak with her, the department began an internal investigation into the incident. As part of that investigation, Hutton submitted a written statement containing his perception of the interaction. Hutton's version of events largely confirmed the contours of the citizen's account, although it differed in some respects. The department determined that Hutton violated several department rules, including three that were specified in the LCA. The deputy chief in charge of the investigation recommended that Hutton's employment be terminated "based on [Hutton's] interaction with [the resident] that occurred on May 14, 2019, his prior discipline, and the [LCA]."

The chief of police agreed with that recommendation, and Hutton was notified of his termination by way of a letter dated July 22, 2019 (termination letter). The termination letter (1) set out the terms of the LCA, (2) recounted Hutton's history of violating department rules and regulations, (3) detailed the May 14, 2019, incident, (4) identified the rules and the directive of the department's strategic operating plan that were violated by Hutton during that incident, (5) set out the history of

6

remedial counseling and training Hutton had received over the years, and (6) concluded:

> "You have approximately 14 years of experience and training as a Chatham Police officer. That is a significant amount of time for you to develop a good understanding of our community, an understanding of the Department's standards and expectations, and plenty of experience to be able to perform a simple duty of being able to assist a citizen with getting to her home. Yet, these basic tasks and duties continue to be problematic for you to perform and have led to citizens being upset, poorly serviced and shining a negative light on both the Chatham Police Department and the Town. It has reached the point where it appears that no additional counseling, disciplinary suspensions, trainings[,] or re-trainings would be useful or productive for you as an employee. Therefore, based on the entirety of your disciplinary record, plus your opportunities that the department has given you to make corrections, as well as the 'Last Chance Agreement,' you are terminated from your employment as a Town of Chatham Police Officer effective immediately."[3]

Of significance, the termination letter did not refer to, nor did it invoke, any provision of the CBA between the town and the union. Nor did it state that Hutton was being terminated for "just cause," pursuant to Article VII, § 4 of the CBA.

The union grieved Hutton's termination and demanded arbitration on the ground that the town terminated Hutton without just cause, in violation of the CBA, "and, alternatively, in violation of his last chance agreement." The

---

[3] We obtained a copy of the termination letter from the trial court since neither party included it in the appellate record.

7

parties presented their case to the arbitrator on August 11, 2020, and submitted written briefs thereafter.[4]

The arbitrator issued a detailed written decision in which, among other things, he found that the town and the union had differing views on the scope of arbitration. The arbitrator found that the town's position as to the scope of arbitration was:

> "Did [Hutton] engage in conduct in violation of his Last Chance Agreement, by violating any of the Chatham Police Department Rules and Regulations, Rule 5[.]01, Neglect of Duty; or of Rule 5.02(c), Incompetence, during his encounter with [the citizen] on May 14, 2019."

By contrast, the arbitrator found that the union's position as to the scope of arbitration was:

> "1. Whether [Hutton] violated the terms of the Last Chance Agreement?
> 2. If not, was there just cause for the discharge of the grievant?
> 3. If the grievance is sustained, what shall be the remedy?"

The arbitrator's findings as to the parties' positions regarding the scope of arbitration are binding on us. See Pittsfield v. Local 447 Int'l Bhd. of Police Officers, 487 Mass. 634, 637-638 (2018).

The arbitrator found that "[t]he Chief based his discharge of [Hutton] on the terms of the Last Chance Agreement, as well

---

[4] The briefs are not dated, but they have been presented to us as "post hearing" briefs.

8

as [Hutton's] past discipline." This finding too is binding on us. See Pittsfield, 487 Mass. at 637-638. Consistent with his findings, the arbitrator concluded that the question before him was whether "Hutton violated the terms of the [LCA], and if he did not, then whether the incident of May 14, 2019, along with [Hutton's] past discipline[,] warranted his discharge." The arbitrator concluded that Hutton's conduct on May 14 did not rise to the level of a violation of the LCA.

Despite his findings regarding the parties' positions as to the scope of arbitration and the bases for the chief's decision to terminate Hutton, the arbitrator nonetheless then proceeded to examine whether there was "just cause" for Hutton's termination under the CBA, and concluded that there was not.[5] The record does not show that the arbitrator considered the relevant provisions of the settlement agreement and the LCA concerning the agreed scope of arbitration before proceeding with his "just cause" analysis.

The town then filed suit, pursuant to G. L. c. 150C, § 11 (a) (3), in the Superior Court, seeking to vacate the arbitrator's decision as beyond the scope of his authority as provided in the settlement agreement and LCA. On the town's motion to vacate the arbitrator's decision and the union's cross

---

[5] The arbitrator concluded that Hutton's conduct merited only a one-week suspension.

9

motion to affirm it, the judge acknowledged that the town had consistently framed the issue for the arbitrator as whether Hutton "engag[ed] in conduct in violation of his Last Chance Agreement." Nonetheless, the judge concluded that "[h]aving found [Hutton's] conduct did not violate the LCA, it was within the [a]rbitrator's authority to determine that discharge was not appropriate. He did not exceed his authority on this point." The judge also concluded that the arbitrator did not exceed his authority by substituting his own judgment for that of the police chief in evaluating whether there was just cause to terminate Hutton under the CBA. The judge also found that the town was estopped from arguing otherwise since it had asked the arbitrator to decide that the town had just cause to terminate Hutton. In fact, the town had not placed that issue in front of the arbitrator, except in the alternative should the union argue that there was no just cause. The judge concluded by affirming the arbitrator's decision in full. Like the arbitrator, the judge made no mention of the relevant provisions of the settlement agreement or the LCA regarding the parties' agreed scope of arbitration and does not appear to have factored them into his analysis. This appeal followed.

Discussion. On appeal, the town argues that the arbitrator should have confined himself to deciding only whether Hutton's conduct violated the LCA. Furthermore, the town argues that the

10

arbitrator exceeded his authority by impermissibly substituting his judgment and ignoring the terms of the CBA. We agree that the arbitrator went beyond the scope of what these sophisticated parties had contractually bound themselves to arbitrate. As a result, the arbitrator's decision must be vacated with respect to the question of whether there was "just cause" to terminate Hutton under the CBA. Deciding as we do, we need not -- and do not -- reach the town's second argument.

"Our role in reviewing an arbitrator's award pursuant to G. L. c. 150C, § 11 is limited. Unlike our review of factual findings and legal rulings made by a trial judge, we are bound by an arbitrator's findings and legal conclusions" (citations omitted). School Dist. of Beverly v. Geller, 435 Mass. 223, 228 (2001) (Cordy, J., concurring). "However, arbitration being the product of an agreement, the arbitrator is without authority to decide matters outside the scope of what the parties have agreed shall be arbitrated." Boston Police Patrolmen's Ass'n v. Boston, 60 Mass. App. Ct. 672, 674 (2004). "Whether an arbitrator has acted beyond the scope of authority conveyed to him is always open to judicial review." Local 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Auth., 392 Mass. 407, 410-411 (1984). The scope of an arbitrator's authority is determined both by the parties' statement of issues and their

11

underlying contractual agreement. See, e.g., School Comm. of W. Springfield v. Korbut, 373 Mass. 788, 792-793 (1977).

We accordingly turn first to the plain language of the settlement agreement and of the LCA. See Mount Vernon Fire Ins. Co. v. VisionAid, Inc., 477 Mass. 343, 348 (2017) ("As with any contract, . . . we begin with the plain language"). As we have already set out above, both the settlement agreement and the LCA provided that termination of Hutton's employment due to a violation of the LCA was not "grievable or arbitrable under the parties' [CBA] except on the issue of whether or not [Hutton] engaged in conduct identified herein." Although these provisions permitted Hutton to grieve his termination, they clearly and definitively restricted the scope of arbitration stemming from any grievance. The meaning of the provision is manifest not only from its plain language, but also from the language of the release of claims under the CBA to which Hutton and the union also agreed under the settlement agreement. In short, the settlement agreement and the LCA clearly and unambiguously limited the scope of any posttermination arbitration to the issue of whether Hutton's conduct violated the terms of the LCA.

We are not persuaded by the town's argument that the settlement agreement and the LCA restricted the arbitrator to merely making findings regarding whether Hutton's conduct

12

occurred and did not extend to determining whether his conduct violated the LCA. The LCA provided that Hutton's termination would not be grievable or arbitrable "except on the issue of whether or not [Hutton] engaged in conduct identified herein." The "conduct identified herein" was any violation of the six enumerated provisions of the department rules and regulations contained in paragraph 1 of the LCA. See note 2, supra. Thus, the arbitrator was within his authority to determine not only what conduct Hutton engaged in, but also whether that conduct constituted a violation of the rules and regulations identified in the LCA.

Once the arbitrator found, as he did, that the parties were not in agreement as to the issues to be arbitrated, he should have turned to the settlement agreement and the LCA (both of which were before him) to determine the permissible scope of arbitration. This he did not do. Instead, the arbitrator attempted to synthesize the issues identified by the parties and in doing so, proceeded to reformulate them in such a way as to expand his authority beyond what the parties had agreed to in the settlement agreement and the LCA.[6]

---

[6] The arbitrator stated, "[T]here are two issues raised in the present case. The first is whether [Hutton] violated the terms of the [LCA], and if he did not, then whether the incident of May 14, 2019, along with [Hutton's] past discipline warranted his discharge."

13

The fact that the union's grievance invoked both the LCA and the CBA, is of no import.  The union could not unilaterally expand the scope of arbitration beyond what it had previously agreed to in the settlement agreement and the LCA.  This is particularly so in light of the settlement agreement's integration clause, which provided that the terms of the agreement could not be "modified, amended, or otherwise affected" except in writing signed by both parties.  No such writing appears in the record before us, and we accept (as we must) the arbitrator's findings that the parties did not reach agreement on the scope of arbitration.

At oral argument, the union argued that, even if the parties did not expressly agree to arbitrate whether the town had just cause to terminate Hutton under the CBA, the town waived its right to argue that the issue was outside of the arbitrator's scope of authority by failing to object at the arbitration.  Even setting aside that we need not consider an argument first raised at oral argument, see Santos v. U.S. Bank Nat'l Ass'n, 89 Mass. App. Ct. 687, 700 n.14 (2016), the argument is at odds with the fundamental underpinnings of arbitration.  As we have already discussed, arbitration is a creature of, and requires, agreement.  The town was under no obligation to do more than it did here.

Nor are we persuaded by the union's argument that the town acquiesced to the expansion of arbitration to include the issue of whether Hutton's termination was supported by just cause. See Massachusetts Bay Transp. Auth. v. Boston Carmen's Union, Div. 589, 17 Mass. App. Ct. 104, 111 (1983) ("An arbitration may be extended by consent, which can be inferred from mutual acquiescence, and we may well assume, in the absence of a demonstration to the contrary, that the arbitrator's decision . . . had some foundation in the hearing"). Simply put, by agreeing to an integration clause requiring a writing signed by all parties in order to modify, amend, or otherwise affect the scope of arbitration, the union waived any argument that acquiescence was instead enough.

We thus conclude that the only issue properly before the arbitrator was whether Hutton's conduct on May 14, 2019 constituted a violation of the LCA. Once the arbitrator concluded that Hutton's conduct on that date did "not r[ise] to the level of 'Neglect of Duty' or 'Incompetence[,'] the specific rules that were cited in the Last Chance Agreement," the arbitrator should not have proceeded further.

Conclusion. The arbitrator's determination that Hutton's conduct on May 14, 2019 did not violate the LCA was within the scope of his authority, and must be affirmed. All other aspects of the arbitrator's award were beyond his authority and must be

15

vacated pursuant to G. L. c. 150C, § 11 (a) (3).  The Superior Court judgment is vacated.  A new judgment shall enter confirming so much of the arbitration award that found that Hutton did not violate the LCA, and reversing all other aspects of the award.

<u>So ordered</u>.

By the Court (Wolohojian, Neyman & Smyth, JJ.[7]),

*Joseph F. Stanton*

Clerk

Entered:  September 15, 2023.

---

[7] The panelists are listed in order of seniority.

16