SUPERIOR COURT 
 
 DAVID M. FASANO VS. RBS CITIZENS & ANOTHER[1]

 
 Docket:
 1977CV01219
 
 
 Dates:
 May 19, 2020
 
 
 Present:
 David Deakin [11] David Deakin Associate Justice
 
 
 County:
 ESSEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS
 
 

 SUMMARY
            The plaintiff, David M. Fasano, brought this civil action to prevent the defendants, RBS Citizens and Citizen's One (collectively, "Citizens"), from foreclosing on his home at 106 Polaris Drive, Mashpee. He alleges that Citizens engaged in a number of improprieties both in extending him a home equity line of credit ("HELOC") secured by a second mortgage on his home and in failing to act in good faith in negotiating a modification of his HELOC debt. Citizens counters both that Essex County Superior Court is the wrong venue for this lawsuit and that, in any event, Fasano's (Second) Amended Verified Complaint (Paper No. 14) fails to state a valid claim for relief. Citizens therefore moves to dismiss under both Mass. R. Civ. P. 12(b)(3) and 12(b)(6).
            Because the court finds that venue is proper in this court, the defendants' Motion to Dismiss pursuant to Mass. R. Civ. P. 12(b)(3) is DENIED. The court further concludes that
---------------------------
[1] Citizen's One
                                                            -2-
Counts Two (breach of contract), Four (breach of the implied covenant of good faith and fair dealing), and Five (failure to produce the original note) fail to state claims upon which relief can be granted and, therefore, as to those counts, the Defendants' Motion to Dismiss is ALLOWED. Because the remaining counts, One (violation of consumer protection regulations in marketing the HELOC), Three (violation of consumer protection regulations in negotiating a modification of the HELOC), and Six (violation of G. L. c. 244, §§ 35B, C), all state claims that, if proved, would support relief, the Motion to Dismiss as to those counts is DENIED.
BACKGROUND[2]
            Fasano bought the house at 106 Polaris Drive, Mashpee ("the Property") in 2000. Sec. Comp. at para. 6.[3] In May 2005, he opened a $50,000 home equity line of credit ("HELOC") with Citizens. Aff. at para. 1.[4] The HELOC was secured by a second mortgage on the Property.[5] Sec. Comp. at paras. 2-3. In 2007, Fasano took out a new line of credit with Citizens, also secured by a second mortgage. Aff. at para. 3. The new line of credit was for $200,000.00. Aff. at para. 3. Fasano took out the second HELOC loan to improve his home. Aff. at para. 4.
---------------------------
[2] Additional facts appear in the Analysis section, infra, as necessary for context.
[3] References to Fasano's (Second) Amended Verified Complaint (Paper No. 14) are denoted by the abbreviation, "Sec. Comp.," followed by a paragraph citation.
[4] References to the Affidavit of David M Fasano, appended to the original Verified Complaint (Paper No. 1), are denoted by the abbreviation, "Aff.," followed by a paragraph citation. Unhelpfully, Fasano's affidavit is not numbered by page or paragraph. The paragraph numbers refer to the court's count of the unnumbered paragraphs.
[5] The record contains no details about the provisions of the 2005 HELOC. The court assumes, for the purposes of this Motion, that its general provisions were roughly similar to those of the 2007 HELOC. See text, infra.
                                                            -3-
            The "Secondary Mortgage Loan Home Equity Line of Credit Agreement" ("Agreement") provided for an initial disbursement of $56,818.03 to Citizens Bank and $143,181.97 in "[u]ndisbursed funds."[6] Agreement (appended to Supplemental Memorandum in Support of Defendant's Motion to Dismiss as Exhibit 1) at p. 10, para. 40. The Agreement established that the "draw period" would last ten years, provided that all other conditions of the Agreement were met. Agreement at p. 1, para. 2. During the draw period, Fasano was permitted to draw up to $200,000.00. Agreement at p. 1, para. 2. At the end of the draw period, the "Repayment Period" would begin. Agreement at p. 1, para. 2. The Repayment Period could last up to fifteen years. Agreement at p. 2, para. 3(c). During the draw period, Fasano's payment obligation was limited to the accrued interest. Agreement at p. 1 para. 3. The rate of interest to be paid on the outstanding HELOC balance was determined monthly, based on The Wall Street Journal Prime Rate. To this rate, Citizens would add "a margin."[7] Agreement at p. 5, para. 19. The minimum rate of interest to be charged was two-and-one-half percent, and the maximum was eighteen percent. Agreement at p. 5, para. 19. Several events, including Fasano's failure to make a payment due under the Agreement, could result in termination of the HELOC and acceleration of the debt. Agreement at p. 6, para. 23. Throughout the life of the Agreement, default by Fasano could result in action up to and including foreclosure. Agreement at p. 8, para. 29.
---------------------------
[6] Although the record does not make this clear, it appears that the initial payment to Citizens of $56,818.03 was to retire an outstanding obligation, likely, at least in part, the outstanding balance of the 2005 HELOC.
[7] The Agreement provided that the annual percentage rate charged on the outstanding balance would be based on The Wall Street Journal Prime Rate or, if it were unavailable, a similar index. To this value, Citizens "add[ed] a margin to the value of the Index." Agreement at para. 19. The Agreement makes it difficult to determine how Citizens determines the margin to be added to the value of the index.
                                                            -4-
            Not long after taking out the second HELOC line of credit, Fasano's business began to suffer. Aff. at para. 7. Eventually, in March 2010, he closed it. Aff. at para. 8. In approximately March 2011, Citizens closed the HELOC and moved Fasano into a closed-end payment plan. Aff. at para. 9. There ensued a series of negotiations between the parties about modifying Fasano's loan obligation, discussions that Fasano generally found unproductive and frustrating. Aff. at paras. 10-23. One source of Fasano's frustration was the defendants' insistence that it could not modify his loan until he had a modification agreement with the first mortgagee. Aff. at para. 11. Citizens notified Fasano of this in April 2011. Aff. at para. 11. Seven months later, he contacted his first mortgagee about restructuring his first mortgage. Aff. at para. 12. He found this process, too, to be extremely difficult. Aff. at para. 13.
            Fasano eventually filed for bankruptcy in March 2014. Aff. at para. 14. He continued to seek modifications of his first- and second-mortgage loans. Aff. at para. 15. In December 2016, Fasano was offered a trial modification of his first-mortgage loan. Aff. at para. 16. Although he found this modification still unaffordable, he concluded that he had no option but to accept it. Aff. at para. 17. He contacted Citizens again about a modification. Aff. at para. 17. This process was again unproductive, from Fasano's point of view. Aff. at paras. 18-21. Fasano maintains that Citizens repeatedly misplaced his paperwork or otherwise neglected his application. Aff. at paras. 18-21. In mid-August 2019, Fasano received a "Notice of Sale," announcing a foreclosure sale of the Property. Sec. Comp. at para. 22. Days later, he filed this lawsuit, seeking to block the foreclosure.
            One month later, on September 19, 2019, Fasano filed a Motion for a Temporary Restraining Order to prevent Citizens from carrying out a foreclosure sale scheduled for October
                                                            -5-
11, 2019. The court (Drechsler, J.) issued a preliminary injunction prohibiting Citizens from proceeding with the foreclosure. That preliminary injunction remains in effect.
            On September 26, 2019, Fasano filed an Amended Verified Complaint (Paper No. 7). On October 24, 2019, Citizens filed a Motion to Dismiss (Paper No. 10), which was denied without prejudice for non-compliance with Mass. Super. Ct. R. 9A. On December 3, 2019, Citizens filed another Motion to Dismiss (Paper No. 12). On February 12, 2020, Fasano filed a Motion to Amend the Verified Complaint again. On February 13, 2020, a hearing was held on the defendants' Motion to Dismiss and Fasano's Motion to Amend the Verified Complaint. At that hearing, the Court allowed Fasano's Motion to Amend the Verified Complaint and permitted Citizens to submit a further memorandum of law in support of its Motion to Dismiss. A further hearing was held on March 12, 2020, and Citizens was granted additional time to supplement its Memorandum of Law in Support of its Motion to Dismiss. The supplemental memorandum was filed on March 19, 2020 (Paper No. 19).
ANALYSIS
            At the threshold, the court notes the claim by Citizens that the (Second) Amended Verified Complaint violates the requirement of Mass. R. Civ. P. 8 that a complaint set out "a short and plain statement of the claim . . . ." The (Second) Amended Verified Complaint is neither short nor plain. Rather, it is labyrinthine, repetitive, and mostly (but not entirely) conclusory, requiring both defendants' counsel and the court to piece together both the nature of the plaintiff's argument and the authorities upon which it rests. The court suspects that, if the (Second) Amended Verified Complaint were presented to an appellate court of the Commonwealth, it would be rejected as non-compliant with Mass. R. App. P. 16(a)(9)(A), (B). Because of courts' preference that serious matters be resolved on their merits, cf. Scannell v. Ed. Ferreirinha & Irmao, LDA, 23 Mass. App. Ct. 465, 470 (1987) (court's preference that
                                                            -6-
substantial issues be addressed on the merits "rather than by default"), rev'd on other grounds, 401 Mass. 155 (1987), the court will address the plaintiffs claims despite the defects in the (Second) Amended Verified Complaint and the plaintiff's pleadings generally.
I. Venue
            Venue in civil actions in the Commonwealth is governed by G. L. c. 223, §§ 1-15. Citizens, however, argues that venue in this court is precluded by 12 U.S.C. § 94, the National Bank Act. Citizens cites First Federal Savings & Loan Assoc. v. Merrimack Valley National Bank, 5 Mass. App. Ct. 320, 322 (1977), as support for this proposition. First Federal, however, interprets an out-of-date version of the National Bank Act. Before October 15, 1982, 12 U.S.C. § 94 provided that, "[s]uits, actions, and proceedings against any [National Bank] association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases." 12 U.S.C. § 94 (1976). In 1982, however, Congress amended 12 U.S.C. § 94 to restrict its application to "[a]ny action or proceeding against a national banking association for which the Federal Deposit Insurance Corporation has been appointed receiver, or against the Federal Deposit Insurance Corporation as receiver of such association . . . ." Garn-St. Germain Depository Institutions Act of 1982, Pub. L. No. 97-320, § 406, 96 Stat. 1469, 1512, 12 U.S.C.A. § 94 (West Supp. 1983) (emphasis supplied). "The language of this amendment, as well as its legislative history (S.Rep. No. 536, 97th Cong., 2nd Sess. 28, reprinted in 1982 U.S. Code Cong. & Ad. News 3054, 3082) indicate that Congress intended to repeal the special venue provision that had previously existed for national banks." Board of Managers of Dominion Plaza One Condo. Ass'n No. 1-A v. Chase Manhattan Bank, NA., 116 Ill.App.3d 690, 692, 452 N.E.2d 382,
                                                            -7-
383 (1983) (parentheses in original). See McKay v. Connecticut Nat 'I Bank, 463 So.2d 1202 (1985) (Dist. Ct. of App., Fla, 3rd Cir.) (per curiam) ("[T]he special venue privilege for national banks was removed by Congress except in cases involving a closed bank or Federal Deposit Insurance Corporation receivership . . . ."). As there is no suggestion in this case that Citizens is in receivership, the National Bank Act's venue provision does not apply to this case. As Citizens has raised no other objection based on venue, its Motion to Dismiss pursuant to Mass. R. Civ. P. 12(b)(3) fails.
II. The Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted
            To withstand a motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6), a complaint must set out "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To meet this burden, "a plaintiff may not assert legal conclusions cast in the form of factual allegations." Schaer v. Brandeis Univ., 432 Mass. 474, 477-478 (2000). A plaintiff must allege facts sufficient "to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Iannacchino, 451 Mass. at 636 (ellipses and parentheses in original), quoting Twombly, 550 U.S. at 555.
A. The claim under G. L. c. 93A for violations of 940 Code Mass. Regs. §§ 7, 8 in the creation of the mortgage (Count One)
            As with many of his claims, the precise nature of Fasano's contention in Count One is difficult to discern. He appears to contend that the second mortgage that Citizens holds on the Property should be invalidated because, in marketing it to him, Citizens violated a number of provisions of 940 Code Mass. Regs. §§ 7, 8, and, in doing so, acted unfairly and deceptively in violation of G. L. c. 93A. The court concludes that, for the reasons set out below, Fasano's claim
                                                            -8-
under G. L. c. 93A for unfair or deceptive practices in marketing the HELOC to him cannot proceed in that form. As the factual allegations set out in Count One, however, could — if proved — establish a basis for reformation or rescission of the loan, Mass. R. Civ. P. 12(b)(6) does not require dismissal of the count.
            As a threshold matter, 940 Code Mass. Regs. §§ 7, 8, do not appear to give rise to private causes of action. See Kenney v. U.S. Bank, NA., 2017 WL 5196386 *3 (D. Mass. 2017) and Lyons v. Federal Nat '1 Mortg. Assoc., 2019 WL 1230364 *3 (D. Mass. 2019). Neither Section 7 nor Section 8 of 940 Code Mass. Regs. expressly provides for a private cause of action to enforce its provisions. The parties have not directed the court's attention to a decision of the Commonwealth's appellate courts addressing this issue, and the court has not found such a case. In the absence of a case on point, the court defaults to the general rule that Massachusetts courts will not infer a private cause of action solely from the existence of a regulation. See Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546 (1998) ("private cause of action cannot be inferred solely from an agency regulation").
            That the regulations themselves do not provide for a private cause of action does not end the analysis, of course. The regulations can form, and have formed, the basis for claims under G. L. c. 93A. See George v. Stonebridge Mort. Co., LLC, 988 F.Supp.2d 142, 150 (2013) (violation of 940 Code Mass. Regs. §§ 8 et seq. can be asserted as part of suit under G. L. c. 93A). Indeed, many of the sub-sections of 940 Code Mass. Regs. §§ 7, 8, begin by establishing that violations of their provisions "shall constitute an unfair or deceptive act or practice," see, e.g., 940 Code Mass. Regs. §§ 7.04(1), expressly employing the language of G. L. c. 93A. Just as "the Legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one," Grady v. Commissioner of Correction, 83 Mass. App. Ct. 126, 131 (2013), quoting
                                                            -9-
Commonwealth v. Russ R., 433 Mass. 515, 520 (2001), so it stands to reason that the Attorney General was well aware of the language of G. L. c. 93A when drafting 940 Code Mass. Regs. §§ 7, 8.[8] There appears to be no doubt, therefore, that violations of those regulations can be the basis of a G. L. c. 93A claim.
            Citizens responds that this case involves consumer protection claims and, therefore, is subject to a four-year statute of limitation. To the extent Fasano is seeking to recover damages under G. L. c. 93A, the court agrees with the defendants' position (see analysis infra) and therefore concludes that Fasano's claim for damages pursuant to G. L. c. 93A in the formation of the mortgage does not state a claim upon which relief could be granted. A complaint, however, "is not subject to dismissal if it would support relief on any theory of law." Pontremoli v. Spaulding Rehab. Hosp., 51 Mass. App. Ct. 622, 626 n.4 (2001) (emphasis in original), quoting Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). Thus, if Fasano can establish the truth of his allegations about the defendants' actions in marketing the HELOC to him and, in so doing, establish that enforcement of the Agreement would be unconscionable, his claim in Count One could support a claim for equitable reformation or rescission of the mortgage. See Drakopoulos v. U.S. Bank Nat. Ass'n, 467 Mass. 775, 787-788 (2013) (unconscionability can be basis for rescission of mortgage).
            An action under G. L. c. 93A is a consumer protection claim. See G. L. c. 260, § 51. The applicable statute of limitation is four years. See id. The statute begins to run "when plaintiff knows or reasonably should have known of the harm attributable to defendant's conduct." Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 994 (1st
---------------------------
[8] Generally, "[p]rinciples governing statutory construction and application also apply to regulations." Beacon Towers Condo. Trust v. Alex, 473 Mass. 472, 477 (2016), quoting Biogen IDEC MA, Inc. v. Treasurer and Receiver Gen., 454 Mass. 174, 190 (2009).
                                                            -10-
Cir. 1988), citing Levin v. Berley, 728 F.2d 551, 556 (1st Cir. 1984). According to Fasano's affidavit, Citizens closed his credit line in March 2011 "without notice and . .. forced . . . [him] into a closed[-]end payment plan causing [his] .. .mortgage payment to nearly triple .. . ." Aff. at para. 9. No later than March 2011, therefore, Fasano was on notice of "the harm [purportedly] attributable to defendant's conduct." Patterson-Leitch Co., Inc., 840 F.2d at 994. As Fasano did not file this action within four years of that time, his claim for damages under G. L. c. 93A as to the defendants' conduct in marketing the HELOC to him is barred by the statute of limitation.
            There is another, independent, ground on which a claim for damages under G. L. c. 93A fails. A demand letter is a necessary prerequisite to suit under G. L. c. 93A. See Lingis v. Waisbren, 75 Mass. App. Ct. 464, 468 (2009) ("Sending .. . [a demand] letter is a 'condition precedent to commencing an action under G. L. c. 91, § 9.'"), quoting Spilios v. Cohen, 38 Mass. App. Ct. 338, 342. The demand letter must "identify[]. . . the claimant and reasonably describ[e] . . . the unfair or deceptive act or practice relied upon and the injury suffered . . .." G. L. c. 93A, § 9(3). See Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 359 (1st Cir. 2013), citing Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812 (1975). The exceptions to the requirement of a demand letter set out in the statute do not apply here. Fasano, as plaintiff, has the burden of both alleging and proving that he sent Citizens a suitable demand letter. See id., citing Entrialgo, 368 Mass. at 813 ("A demand letter listing the specific deceptive practices claimed is a prerequisite to suit and as a special element must be alleged and proved."). As Citizens notes, Fasano neither alleges that he sent the required demand letter nor produces a copy of such letter. Thus, the court would be constrained to dismiss a claim for damages under G. L. c. 93A on this ground, even were it not time-barred.
                                                            -11-
            In connection with Count One, however, Fasano makes a number of claims that, if proved, could support equitable relief. He claims that Citizens extended him a HELOC that, based on the income he reported to the mortgage broker, "the broker knew or had reason to know the plaintiff could not afford as [sic] the fully indexed rate." Sec. Comp. at para. 1. He further alleges that he did not receive the closing documents before the closing "and was rushed through the signing." Sec. Comp. at para. 10. No one from Citizens explained the loans to Fasano, he maintains. Sec. Comp. at para. 11. According to the (Second) Amended Verified Complaint, Citizens "assured the Plaintiff that he could afford the loan." Sec. Comp. at para. 14. At this stage, the court is constrained to accept these factual representations as true. If Fasano is, indeed, able to prove these facts at trial, they could support an equitable remedy of rescission. Thus, although Count One cannot support an action for damages under G. L. c. 93A, it is not subject to dismissal insofar as it makes out a prima facie case for equitable relief of reformation or rescission.
                        B. Breach of contract under the Home Mortgage Affordable Modification Program (HAMP): Count Two
            In his (Second) Amended Verified Complaint, Fasano contends that Citizens violated its contractual obligation under the Home Affordable Modification Program ("HAMP") in failing to negotiate a modification of his mortgage in good faith. Fasano relies on a 2011 ruling of this court in Parker v. Bank of America, NA, 29 Mass. L. Rptr. 194 (2011). In Parker, an associate justice of this court held that distressed mortgagors are intended beneficiaries of agreements between banks and the federal government under HAMP and therefore entitled to bring civil actions to enforce those agreements. The Appeals Court, however, subsequently rejected this argument in Santos v. U.S. Bank Nat '1 Ass 'n, 89 Mass. App. Ct. 687, 699-702 (2016). In Santos, the Appeals Court joined the nationwide "consensus .. . that there is no private action under
                                                            -12-
HAMP and that borrowers are not intended third-party beneficiaries of S[ervicer] P[articipation] A[greement]s or similar contracts between lending banks and [Fannie Mae]." Santos, 89 Mass. App. Ct. at 699. Count Two of the (Second) Amended Verified Complaint asserts that Citizens breached its contract with the federal government under HAMP. Sec. Comp. at para. 57. As a private cause of action by a mortgagor as an intended beneficiary of agreements under HAMP has been rejected as a matter of law by the Appeals Court in Santos, Fasano's breach-of-contract claim fails.
            Because of its conclusion that Fasano as mortgagor is not an intended beneficiary of the defendants' agreements with the federal government under HAMP, the court need not reach their argument that HAMP has no application to this case because that statute applies only to homes used as a mortgagor's primary residence. Fasano alleges that he lived in the Property as his primary residence until roughly "two years ago." Sec. Comp. at para. 6. Apparently, Fasano then ceased living full-time with his family, who continued to live in the Property as their primary residence. Sec. Comp. at para. 6. Now, Fasano lives in the Property "part time." Sec. Comp. at para. 6. Citizens has directed this court to no authority resolving the question whether, under these circumstances, the Property continues to be Fasano's primary residence, and the court has found none. Not only does the court not have to reach this issue because of its conclusion that Fasano is not an intended beneficiary of agreements under HAMP, but also the question whether the Property continues to be Fasano's primary residence is one of fact. As the court must draw reasonable inferences in Fasano's favor, this unresolved factual issue would not justify dismissal of this count.
                                                            -13-
                        C. The claim under G. L. c. 93A for violations of 940 Code Mass. Regs. §§ 7, 8 in the modification process (Count Three)
            In Count Three, Fasano asserts that Citizens violated the provisions of 940 Code Mass. Regs. §§ 7, 8 in failing to negotiate a modification of his loan in good faith. Citizens counters that Fasano's failure to serve it with a demand letter, see G. L. c. 93A, § 9(3), precludes this claim. See also Section I, A, supra. For the reasons set out in Section II, A, supra, Fasano's (Second) Amended Verified Complaint does not make out a valid claim under G. L. c. 93A because it does not allege that he sent a demand letter as required by that statute. As was the case with Count One, however, Count Three alleges conduct that, if proved, could form the basis for equitable relief. So, Fasano's claim that Citizens employees encouraged him to fall behind in his loan payments in order to qualify for a modification, if proved, could be the basis for a claim for equitable relief. The same is true of Fasano's claim that Citizens employees acted unreasonably in requesting documents from him and then failing to process his request for a modification. Thus, as is true of Count One, although Count Three cannot support an action under G. L. c. 93A, at least two of its factual allegations could support an action for equitable reformation or rescission of the mortgage. Dismissal of Count Three is therefore not warranted.
D. The claim for breach of implied covenant of good faith and fair dealing under HAMP (Count Four)
            Fasano's claim in Count Four that Citizens violated the covenant of good faith and fair dealing implied in every contract in Massachusetts fails for the same reason Count Two does not state a cause of action upon which relief can be granted; he has not shown that he had a contract with Citizens to modify the terms of his obligation. Fasano here again relies on his purported status as an intended beneficiary of the defendants' agreement with the federal government under
                                                            -14-
HAMP. As noted in Section II, B, supra, however, Massachusetts case law forecloses that argument.
            Also in Count Four, Fasano restates most, if not all, of the claims set out in Count Three, recasting them as a violation of the duty of high good faith and trusteeship that a mortgagee owes to the mortgagor. As he re-asserts these claims in the context of a breach-of-contract action based on HAMP, however, they do not make out a separate and/or independent cause of action upon which relief can be granted. Finally, to the extent Count Four asserts a claim based on the particular duties of a mortgagee purchasing a property at a foreclosure sale, the claim is premature as no foreclosure sale has taken place. The question whether Citizens could properly purchase the Property at the foreclosure sale is therefore not ripe for resolution.
                        E. Failure to produce the original note: Count Five
            Fasano alleges in Count Five that he has made "several requests to observe the original note" and that he has not been permitted to do so. Sec. Com. at para. 85. There appears to be no dispute that Fasano executed the note or that Citizens has provided Fasano with a photocopy of it. Fasano maintains, however, that, under Massachusetts law, a foreclosing mortgagee must produce the original note in order to foreclose. He invokes the Uniform Commercial Code (UCC) for the proposition that the holder of the note must hold the original note and produce it for inspection as a precondition to foreclosure.[9] He cites no case in which the courts of the Commonwealth have adopted this position. Indeed, existing Massachusetts authority, although not directly on point, seems to hold to the contrary. See Eaton v. Federal Nat'l Mrtge. Ass 'n, 462
---------------------------
[9] Fasano's citation to the Uniform Commercial Code, "Article 3 of the Massachusetts U.C.C[.] section 2: 88.2(a) Foreclosing lender must have physical possession of the original promissory note," appears to be inaccurate. The court has been unable to locate this language in the Commonwealth's codification of the UCC.
                                                            -15-
Mass. 569, 586 (2012) ("Contrary to the conclusion of the motion judge, however, we do not conclude that a foreclosing mortgagee must have physical possession of the mortgage note in order to effect a valid foreclosure."). Stated as it is in the (Second) Amended Verified Complaint as an independent cause of action, the claim set out in Count Five does not set out a valid basis for relief and therefore fails.
                        F. Claims of violations of G. L. c. 244, §§ 35A, B, C: Count Six
            In Count Six, Fasano claims that purported violations of G. L. c. 244, §§ 35A, B, and C, preclude Citizens from initiating a lawful foreclosure by statutory power of sale. Citizens raises a number of legal objections to this claim, some valid, some not. Because the court concludes that Fasano's objections based on purported violations of G. L. c. 244, § 35B, if proved, could support equitable relief, the defendants' Motion to Dismiss fails as to Count Six.
            The defendants' first line of argument is that, even if established, violations of §§ 35, A, B, and C, do not state causes of action. This is because, Citizens maintains, the sections are not part of the mortgage foreclosure process. Citizens bases this contention on the Supreme Judicial Court's holding in US Bank Nat'l Assoc. v. Schumacher, 467 Mass. 421, 422 (2014), that "G. L. c. 244, § 35A, is not part of the mortgage foreclosure process." Citizens appropriately concedes that Schumacher did not address whether G. L. c. 244, §§ 35B and C were part of the mortgage foreclosure process. Citizens contends, however, that the holding in Schumacher applies equally to those sections because all three sections "are part of the same statutory scheme." Memo. at p. 6.[10] Although this may be true in a broad sense, it is by no means dispositive. Indeed, both § 35B and § 35C include express provisions requiring that a foreclosing mortgagor certify compliance
---------------------------
[10] References to the Memorandum of Law in Support of Defendants' Motion to Dismiss are denoted by the abbreviation, "Memo," followed by a page citation.
                                                            -16-
with the statute before advertising a foreclosure sale. See G. L. c. 244, § 35B(f); G. L. c. 244, § 35C(b). Section 35A of G. L. c. 244, held in Schumacher not to be part of the mortgage process, contains no such provision. That the Schumacher court concluded that Section 35A is not part of the foreclosure process, therefore, says nothing about whether Sections 35B and 35C are part of that process. Indeed, as their plain language establishes that they are prerequisites to the initiation of that process, the defendants' contention to the contrary cannot be correct.
            The defendants next argue that Fasano alleges no facts that could support the conclusion that the HELOC at issue in this case is a "certain mortgage loan" as that term is used in G. L. c. 244, § 35B, and that, therefore, the statute does not apply to the loan. The statute defines the "certain mortgage loan[s]" to which its provisions apply. See G. L. c. 244, § 35B(1). It does so by listing several types of loans that are "[c]ertain mortgage loan[s]". G. L. c. 244, § 35B(1). Among them are loans that "did not require full documentation of income or assets." In both his affidavit and at various points in his (Second) Amended Verified Complaint, Fasano avers that no documentation was required of him before his applications for HELOC loans were approved. Thus, as alleged in the (Second) Amended Verified Complaint, the HELOC in this case is one of the types of loans that falls under the ambit of § 35B.
            Finally, Citizens argues that § 35A has no application in this case because it applies only to property used by the mortgagor as the mortgagor's "primary residence." For the reasons set out in Section II, B, supra, however, this argument cannot be resolved properly by a motion to dismiss.
            In Count Six, Fasano argues that his several claims of impropriety on the defendants' part dictate the conclusion that the defendants' certification under G. L. c. 244, § 35B is false. Again, at this stage, the court is constrained to accept Fasano's factual claims as true. If, in fact, those
                                                            -17-
allegations are proved, they could support a conclusion that the defendants' certification under G. L. c. 244, § 35B, was, in fact, false. Under these circumstances, the court cannot dismiss Count Six.
CONCLUSION AND ORDER
            For the foregoing reasons, the defendants' Motion to Dismiss is ALLOWED IN PART and DENIED IN PART. Specifically, the Motion to Dismiss is ALLOWED as to Counts Two (breach of contract), Four (breach of the implied covenant of good faith and fair dealing), and Five (failure to produce the original note). The Motion to Dismiss is DENIED as to Counts One (violation of consumer protection regulations in marketing the HELOC), Three (violation of consumer protection regulations in negotiating a modification of the HELOC), and Six (violation of G. L. c. 244, §§ 35B, C).
@/s/David Deakin [11] David Deakin Associate Justice
@May 19, 2020
---------------------------
[11] Signed electronically because of the COVID-19 public health emergency. See Supreme Judicial Court Order 0E-144, Concerning Electronic Signatures of Judges and Clerks, March 25, 2020, at p. 2.